# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
September 8, 2015

*In re* BARROS/McEACHERN/STURMAN,
Minors.

No. 325753
Washtenaw Circuit Court
Family Division
LC Nos. 13-000003-NA;
          13-000004-NA;
          13-000005-NA

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

Respondent-mother, S. Law, appeals as of right the trial court's order terminating her parental rights to three of her four minor children under to MCL 712A.19b(3)(c)(*i*) (the parent is not reasonably likely to rectify the conditions leading to adjudication), (g) (the parent has failed to provide the children with proper care and custody), and (j) (the children are likely to be harmed if returned to the parent's home). We affirm.

## I. FACTUAL BACKGROUND

Law has a lengthy history with the Department of Health and Human Services (DHHS) that included around 60 referrals. DHHS removed the children from Law's home in 2010. DHHS returned the children to the home, but again petitioned for their removal in December 2012. DHHS alleged that in June 2012, one of the children drove her vehicle through the garage wall while high on marijuana, and in December 2012 Law left her younger son in the care of a sex offender. Amended petitions alleged that Law tested positive for marijuana and cocaine in February 2013, and that Law was involved in an altercation and made poor choices regarding the people she allowed in her home.

After a jury determined that the children came within the court's jurisdiction, it placed the three youngest children with their maternal grandmother. However, by June 2013, the maternal grandmother indicated that she could not care for Law's two sons. Shana Chapman, the children's caseworker, testified that Law was not participating in drug screens. In September 2013, Chapman reported that Law continued to miss drug screens and test positive for substances and alcohol. Chapman also testified that parenting time was difficult because Law would not appear, appear late, or discuss inappropriate topics with the children.

-1-

By April 2014, Law had not demonstrated progress with services. DHHS petitioned the trial court to terminate Law's parental rights. In July 2014, a guardianship was initiated for Law's oldest daughter. The guardianship was ultimately successful, and the trial court terminated its jurisdiction over her. The younger son was placed with his father, and the older son and younger daughter were placed in a residential facility, from which they were later moved to a foster home.

The trial court took extensive evidence at termination hearings in December 2014 and January 2015. According to Chapman, Law was diagnosed with opiate dependence and marijuana abuse in May 2013. Law had participated in a substance abuse program in jail and, after an unsuccessful inpatient treatment program from which she was discharged for having an altercation with another person in treatment, she successfully completed an inpatient treatment program in September 2014. However, Law continued to miss drug tests and to test positive for amphetamines and opiates. Chapman also testified that Law had six addresses over the past two years and was presently in a "squatter" home. Chapman opined that Law did not benefit from her treatment plan.

According to Chapman, the younger son was living with his father in a structured environment that provided stability. The older son had behavior, emotional, and academic issues. After an unsuccessful foster home placement, he was placed in a residential facility. In December 2014, the older son left the facility, and his whereabouts were unknown until he was found during the termination hearing. The youngest daughter had behavior problems and ADHD. She was in a foster home and required stability.

Chapman testified that Law is strongly bonded with her children. However, her bond with the older son was unhealthy because the older son "tends to be like a parent," and Law encouraged the son to run away from his placement. According to Ashley Lucas, Law's parenting time supervisor, the only month Law was on time to all of her visits was October 2014. Law could not handle all of the children at one time. Law talked about inappropriate topics with the children, would not discipline them or address inappropriate behaviors, and did not plan activities for them.

The trial court found that Law had clearly not benefitted from her service plan. It also found that DHHS was very dedicated in attempting to provide services over a sustained period of time, but that Law had not complied with the services. According to the trial court's findings, Law was "in a state of chaos," and that chaos had spilled over to Law's children. Law gave her children, particularly the oldest son, poor advice and had an unhealthy connection with them. Law had poor performance on the drug screening, Law's housing situation seemed "made up on the spot and absolute continued chaos," and her environment was dangerous for a child. Ultimately, the trial court found that DHHS had proved MCL 712A.19b(3)(c)(*i*), (g), and (j) by clear and convincing evidence.

The trial court also found that terminating Law's parental rights was in the children's best interests. It found that Law's bond with her oldest son was unhealthy, and that Law's bond with the other children was not completely healthy. Terminating Law's parental rights to the oldest son, even though he would be placed with a relative, was necessary so that Law could not "sabotage" him further. Regarding the youngest son, the trial court noted that the call was more

difficult, but a custody order to protect the son would have to be so restrictive as to unworkable and it would not prevent Law from "undermin[ing] attempts to help her children in a healthy way." The trial court also considered the youngest daughter and found that termination was in her best interests.

## II.  STANDARDS OF REVIEW

The trial court must order the parent's rights terminated if it finds from a preponderance of evidence that termination is in the children's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012); *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).  This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination.  MCR 3.977(K); *Olive/Metts*, 297 Mich App at 40.  We review for clear error the trial court's determination regarding the children's best interests and whether it failed to address a significant difference between the children's best interests.  *In re White*, 303 Mich App 701, 716; 846 NW2d 61 (2014).  The trial court has clearly erred if we are definitely and firmly convinced that it has made a mistake.  *Id*. at 709-710.

## III.  STATUTORY GROUNDS

Law contends that the trial court erred when it found that statutory grounds supported terminating her parental rights because she was participating in treatment to address her drug abuse issues.  We disagree.

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a parent's rights if there is clear and convincing evidence that:

> [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

This statutory ground exists when the conditions that brought the children into foster care continue despite time to make changes and the opportunity to take advantage of services.  *White*, 303 Mich App at 710.  Children should not be forced to wait for long periods for "the mere possibility of a radical change in [the parent's] life."  *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009).

MCL 712A.19b(3)(g) provides that the trial court may terminate a parent's rights if

> [t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

And MCL 712A.19b(3)(j) provides that the trial court may terminate parental rights if

> [t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

-3-

A parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide a child with proper care and custody and that the child may be harmed if returned to the parent's home. *White*, 303 Mich App at 710-711.

In this case, the record amply demonstrates that, despite time and the opportunity to make changes to her life, Law did not benefit from her case service plan. The plan was designed to address her substance abuse and housing issues, but Law continued to use drugs, failed to benefit from a variety of substance abuse services, and proved unable to maintain stable housing. Law complied with or attempted to comply with some portions of her service plan, but we are not definitely and firmly convinced that the trial court made a mistake when it found that returning the children to Law's home would subject them to unsafe conditions.

## IV. THE CHILDREN'S BEST INTERESTS

Law contends that the trial court clearly erred when it determined that termination was in the children's best interests. We disagree.

"The trial court should weigh all the evidence available to determine the children's best interests." *White*, 303 Mich App at 713. The court should consider a wide variety of factors. *Id.* at 713. Among other things, these factors may include the child's bond to the parent, the parent's parenting ability, the child's need for stability, the parent's compliance with his or her case service plan, the parent's visitation history with the child, and the child's well-being while in care. *Id.* at 714. The trial court should address significant differences between the children's best interests, but it need not make redundant, individual factual findings. *Id.* at 715-716. The trial court should explicitly address whether the children were placed with relatives. *Olive/Metts*, 297 Mich App at 43.

In this case, the trial court strongly considered the children's needs for safety and stability. It found that the children would not be safe or stable with Law. The record supported this finding, since Law had a history of engaging in violent conduct, unstable housing, and illegal drug use. Law continued to test positive for substances after two treatment programs, including one in-patient program. There was no indication that Law's conduct was improving or would improve in the future.

The trial court also considered the bond between the children and Law. It found that they were bonded, but that the bond was not healthy. Even if the parent and children are strongly bonded, if there is a serious dispute about whether a parent has a *healthy* bond with the children, termination may be in the children's best interests. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2001), overruled in part on other grounds by *In re Sanders*, 495 Mich 394, 422-423 (2013). Again, the record supports the trial court's finding. Law encouraged her older son to engage in behavior to subvert DHHS's placement decisions. She also engaged in inappropriate talk with the children during parenting time.

Next, the trial court found that Law's progress on her case service plan was poor. The trial court noted that Law was prepared to blame everyone but herself for her children's living conditions and that she was not committed to change. It also considered the children's wellbeing while in placements and found that the younger son and daughters were doing well in their

placements. The oldest son was not, but that was at least partially attributable to Law's influence. Chapman's testimony supported these findings.

Finally, contrary to Law's assertion, the trial court did address the best interests of the children individually: the trial court discussed specifics of each child by name, noted which children were placed with relatives, and how their placements affected its decisions. Law's assertion that the trial court did not consider the best interests of each child is baseless.

We are not definitely and firmly convinced that the trial court made a mistake when it found that terminating Law's parental rights was in the children's best interests. The trial court considered a variety of factors and the record evidence available, which supported its findings. We conclude that the trial court did not clearly err by terminating Law's parental rights.

We affirm.

/s/ Stephen L. Borrello
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell

-5-