*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re W. HICKEY, Minor.

UNPUBLISHED
July 25, 2019

No. 347183
Calhoun Circuit Court
Family Division
LC No. 2016-003534-NA

Before: O'BRIEN, P.J., and FORT HOOD and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, WH, under MCL 712A.19b(3)(c)(*i*) (182 or more days have elapsed since the issuance of an initial dispositional order and the conditions leading to adjudication continue to exist); (i) (the parental rights to siblings of the child were terminated due to neglect or abuse and the parent failed to rectify the conditions that led to the prior termination); and (j) (there is a reasonable likelihood of harm if returned to the parent). Respondent also challenges whether the county she resided in at the time the case was filed had the authority to reject two attempted transfers of this case from the trial court that ultimately issued the termination order. For the reasons stated below, we affirm.

The Department of Health and Human Services (DHHS) filed an ex parte request in December 2016 asking the trial court to take jurisdiction over WH. In relevant part, the DHHS alleged that on December 18, 2016, the Battle Creek Police Department was contacted when respondent and father were found unconscious in their car while WH was in the backseat without proper care.[1] Multiple needles were found in the vehicle, both parents admitted to the police that they were unconscious because of drug use, and both parents were taken to the Calhoun County Jail. The DHHS requested that the trial court authorize the petition, take jurisdiction over WH, and continue his removal from the home because the home environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of the parents, was an unfit place for the child to live.

---

[1] Father's rights were also terminated, but he is not a party to this appeal.

The trial court found by a preponderance of the evidence that the home environment, by reason of neglect or criminality, was an unfit place for the child to live, made WH a temporary ward of the court, and placed him in a foster-care home. The trial court twice attempted to transfer the case to St. Joseph County, where respondent resided. St. Joseph rejected the transfers. In light of the rejection of the transfer, the prosecutor stated that arrangements would be made to make services and parenting time as easy as possible for respondent. Respondent subsequently moved to Calhoun County in the fall of 2017.

The trial court ordered respondent to undergo a substance-abuse assessment, drug screens, and a psychological evaluation and to participate in mental-health and domestic violence counseling, secure stable housing and income, and to participate in services related to parenting skills and substance abuse. Throughout the 24 months that the case was in court, respondent completed only a few drug screens even though she was ordered to complete them weekly; she had verifiable employment for only a handful of months; she did not complete domestic violence counseling; she only attended a few substance abuse counseling appointments before being terminated for lack of compliance; she refused mental-health counseling; she had been incarcerated for the charges related to the incident leading to WH's removal and was charged with an additional, unrelated felony embezzlement crime; the State of Indiana terminated respondent's parental rights to her other two minor children after more than four years of her failure to comply with and benefit from services; and she only attended 7 out of 80 parenting time visits offered within the first year of the case before becoming more involved. During the second year, respondent did participate in parenting classes. However, the caseworker testified that she did not believe respondent benefited from parenting classes. Although the trial court noted that respondent's parenting was appropriate during parenting time visits, it also noted her lack of consistency in attending parenting times, including a period of time when she was incarcerated. The caseworker was not sure if WH understood that respondent was his mother because he appeared uncomfortable when arriving for visits and referred to respondent by her first name.

At the termination hearing, the caseworker reported that WH was doing "extremely well" and was very bonded with his preadoptive, foster-care family. WH had special needs regarding speech and articulation, but was making great progress with his speech therapist. The foster family engaged with WH and had him participating in activities. WH had many toys he loved to play with, and he seemed "very comfortable" in the home.

Following the conclusion of the termination hearing, the trial court entered an order terminating respondent's parental rights. The trial court found that the DHHS made reasonable efforts to preserve and reunify the family but that the efforts were unsuccessful. The trial court determined that although respondent completed parenting classes and was good with WH during the parenting times she attended, she failed to rectify the conditions that led to the adjudication, including her continued drug use, lack of substance abuse counseling, probation violation and subsequent incarceration, lack of appropriate housing or verification of whom she was living with, lack of legal income, parental rights being terminated to her two other minor children in Indiana, and failure to rectify those conditions within a reasonable time considering the minor child's age. The trial court determined that respondent failed to show that she was able to provide proper care or custody for WH and that there was a reasonable likelihood that WH would be harmed if he were returned to respondent's care. Therefore, the trial court determined

-2-

that the DHHS proved the statutory bases for termination pursuant to MCL 712A.19b(3)(c)(*i*), (i), and (j) by clear and convincing evidence.

Additionally, the trial court held that termination of respondent's parental rights was in WH's best interests due to his need for permanency and a stable home, his lack of bond with respondent, the advantages of WH's foster-home placement, and the possibility of adoptive placement. This appeal followed.

Respondent first argues that jurisdiction was not proper in Calhoun County and that St. Joseph County was obligated to accept the transfer of the case from Calhoun County because both parents and WH resided in St. Joseph County at the time the case was filed. She argues that the failure of St. Joseph County to accept the transfer resulted in protracted proceedings that were detrimental to reunification. We disagree.

Issues concerning family court procedure under the court rules present questions of law that this Court reviews de novo. *In re CR*, 250 Mich App 185, 200; 646 NW2d 506 (2002). To acquire jurisdiction, the fact-finder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2. *In re Brock*, 442 Mich 101, 108-109; 499 NW2d 752 (1993).

Pursuant to MCL 712A.2(b), the family division of the circuit court has authority to assume jurisdiction in proceedings concerning a juvenile under 18 years of age "found within the county." MCR 3.926(A) states, "As used in MCL 712A.2, a child is 'found within the county' in which the offense against the child occurred . . . or in which the minor is physically present." MCR 3.926(B) provides, in pertinent part:

> When a minor is brought before the family division of the circuit court in a county other than that in which the minor resides, the court may transfer the case to the court in the county of residence before trial.
>
> (1) If both parents reside in the same county, or if the child resides in the county with a parent who has been awarded legal custody, a guardian, a legal custodian, or the child's sole legal parent, that county will be presumed to be the county of residence.

In this case, the neglect petition and protective proceedings were initiated in Calhoun County, where the alleged acts that formed the basis for the protective proceedings transpired. The Battle Creek Police Department, within Calhoun County, arrested respondent and father because they were found in their car unconscious from drug use with WH present in the backseat. Therefore, WH was "found within [Calhoun] county" within the meaning of MCL 712A.2(b) because Calhoun County was the county where "the offense against the child occurred" and where the minor child was "physically present." MCR 3.926(A).

In her brief on appeal, respondent concedes that "Calhoun County had the authority to assume jurisdiction" but argues that St. Joseph County "had no such right" to decline the transfer of the case from Calhoun County. Calhoun County attempted transfer twice under MCR 3.926(B), which provides that a trial court may transfer the case to the court in the county of

residence before trial, but St. Joseph County refused to accept the case. Respondent states that St. Joseph County mistakenly relied upon MCR 3.926(D), which gives it the authority to decline a transfer for the convenience of the parties and witnesses. However, St. Joseph County did not cite this court rule—or any other court rule—when it rejected the transfers. St. Joseph County simply completed the SCAO "Order to Transfer Case" form by checking off the box that indicates "[t]he court rejects transfer." Additionally, on the first Order to Transfer Case, St Joseph County cited the following reasons for rejecting the transfer: "(1) The abuse did not occur in St. Joseph County, (2) Trial is already scheduled in Calhoun County, and (3) No evidence that the minor is a resident of St. Joseph County." On the second Order to Transfer Case, St. Joseph County again stated, "(1) Trial is scheduled in Calhoun County, and (2) Evidence Supporting adjudication is entirely in Calhoun County." Respondent does not cite any case law, statute, or court rule that would require St. Joseph County to accept the transfer. Moreover, the record reflects that respondent moved to Calhoun County during the pendency of the case, lives there now, and that there were more services available to her in Calhoun County. Because respondent has not established that St. Joseph County erred by not accepting the transfer, and because the trial court had jurisdiction over this case for the reasons already explained, the trial court properly exercised jurisdiction over WH.

Respondent further argues that because St. Joseph County refused the transfer of the case, the "court system placed roadblocks in the way of reunification." Respondent's argument is unconvincing. Respondent was given two years to comply with services. In the first year, she was almost completely noncompliant. In the second year, she moved to Calhoun County—thereby eliminating the alleged "roadblocks in the way of reunification"—and her noncompliance continued. Respondent continued skipping drug screens, missing parenting time visits, and failing to participate in the wide variety of services offered. Based on respondent's conduct throughout the lower court proceedings, the barriers to reunification were of respondent's own making, not the State's.

Respondent next argues that the trial court erred in finding statutory grounds for termination. We disagree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). In reviewing the trial court's determination, this Court must give due regard to the unique opportunity of the trial court to judge the credibility of those witnesses who appeared before it. *Id*.; see also MCR 2.613(C).

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (i), and (j). First, the trial court did not clearly err by determining that there was clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). This statutory provision permits termination of parental rights when:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial

dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination of parental rights is proper under this statutory subsection when "the totality of the evidence amply supports that [the respondent] had not accomplished any meaningful change in the conditions" that led to the trial court taking jurisdiction over the child, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*).

The trial court found that termination was proper under subsection (c)(*i*) because respondent failed to rectify her substance abuse, mental-health issues, domestically violent relationships, criminality, lack of appropriate housing, and lack of legal income during the proceedings of this case. The trial court reasoned that respondent was in the "same situation" as at the beginning of the case. Also, the trial court entered the initial disposition order on December 27, 2016 and terminated respondent's parental rights on December 20, 2018. Therefore, "182 or more days" had "elapsed since the issuance of an initial disposition order." See MCL 712A.19b(3)(c).

The trial court record supports that, at the time of termination, the conditions that led to adjudication continued to exist. In more than 24 months since the child's removal, respondent failed to accomplish any meaningful change in the conditions that led to the trial court taking jurisdiction over the minor child. See *Williams*, 286 Mich App at 272. The principal conditions that led to the adjudication still existed at the time of the termination trial. The initial incident that led to the adjudication was the police finding respondent unconscious in her vehicle from drug use with WH present. Respondent admitted to drug use, having mental-health issues, incarceration for child-abuse and drug charges and then later felony embezzlement charges, and having unstable housing, employment, and relationships.

With respect to respondent's drug abuse, respondent only completed a few drug screens out of the once-a-week screens she was ordered to take. Respondent consistently tested positive for THC, in addition to other drugs on a number of occasions. Respondent did not complete drug abuse or mental-health counseling, although she was ordered to and testified that she knew she needed it. Instead, respondent admitted that she continued to use marijuana to "self-medicate" during times of "stress."

Also, the trial court found that housing remained an issue for respondent. Respondent was ordered to maintain safe, stable, and appropriate housing. However, she had moved several times during the pendency of the case, at one point admitted she was homeless, and never fully complied with orders to identify with whom she was living. For instance, in May 2018, respondent was living with her boyfriend, an unidentified gentleman for whom the caseworker had requested identification for on a number of occasions, and the room that respondent explained would be for WH was a pantry. Further, according to the caseworker, to get to

respondent's room in the unfinished basement from WH's proposed bedroom, he would have to go outside. By July 2018, respondent had moved in with a friend because the boyfriend she was living with "was violent and hit her multiple times during the relationship." Although the DHHS found respondent's friend to be appropriate, respondent planned to have her new boyfriend and his 15-year-old son move into the home with her and her friend, and respondent refused to provide identification information to allow the DHHS to ensure they were appropriate for WH to live with.

Additionally, the lower court record supports the trial court's finding that there was no reasonable expectation that respondent would be able to rectify the conditions that led to adjudication within a reasonable time. The trial court presided over this matter for approximately 24 months, during which time respondent showed minimal improvement. Respondent's decisions led to periods of incarceration during the termination proceedings, she had lost her housing and employment several times, entered additional relationships that led to her being a victim of domestic violence, she did not attend counseling, and she continued to use drugs. Respondent failed to demonstrate that she was able to consistently address and manage the conditions that led to the adjudication on a long-term basis. Given these circumstances, the trial court did not err in determining that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the minor child's young age. MCL 712A.19b(3)(c)(*i*). Therefore, the trial court did not clearly err in finding that termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*).

Because we conclude that the trial court did not clearly err by determining that one statutory ground for termination existed, we not need to address the additional grounds for termination. See *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

Respondent next argues that termination of her parental rights was not in WH's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87. The court may consider "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. At this stage, the interest of the child in a stable home is superior to any interest of the parent. *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016).

In determining the best interests of WH, the trial court considered the fact that he had been in foster care for "more than 50% of his life." The record clearly indicated that for the first year of the case, respondent rarely visited WH as specified in the case-service plan and had minimal meaningful contact with her son; thus, virtually precluding the development of any

bond. The trial court noted that it took more than play time or being appropriate during parenting time to be in the best interests of WH not to terminate parental rights. The trial court found that WH deserved to be in a stable household, free of drug use, and with a mentally stable guardian. Also, the trial court found there was "no reasonable expectation, based upon the history" that respondent will be in shape for WH to be returned to her. The trial court also pointed out that respondent's parental rights case in Indiana had been ongoing for the same issues for over four years. The trial court found that it was "absolutely in the best interest of [WH] to terminate parental rights" because the case was two years old, was in the "same spot," and the child deserved to move forward with his life.

The trial court found that it was not in the child's best interests to continue to try to return him to respondent's care. The record indicated that WH had flourished under the care of his foster family. WH had benefited from regular speech and physical therapy because of his deficiencies at the time of placement. The foster family had expressed an interest in adopting WH, the family was bonded, and they would provide stability and permanence. The trial court found that the bond between respondent and WH weakened based on the testimony presented, including that WH referred to respondent by her first name. Although the trial court agreed that this was "disrespectful," it stated that names and labels are not as important as the "relationship." The caseworker noted that WH seemed uncomfortable when respondent arrived for parenting time visits, was confused by the whole situation, and did not want to talk about the visits when asked. Instead, WH would say he wanted to "go home" after visits, referring to his foster home.

Also, the trial court pointed out that the recommendation from the psychological evaluation was that respondent establish a responsible and consistent lifestyle and demonstrate stability for six to nine months, including employment, housing, transportation, a healthy support network, and being drug free, prior to having WH returned to her care. The psychologist determined that respondent's "overall prognosis for developing the structure and skills necessary to parent within the next 6 to 9 months is poor." The trial court stated that even if respondent started that day, there was no evidence that she could maintain the goals outlined in the evaluation, and WH could not wait another six months to a year for respondent. Respondent argues that she was in substantial compliance with her service plan and that using marijuana had no ill effect on her ability to parent. However, as discussed earlier, respondent failed to show proof of safe and appropriate housing for WH, was proposing to move him into a home with her unidentified boyfriend and his 15-year-old son, and refused to address her mental-health issues or drug abuse, instead choosing to "self-medicate" with marijuana, so this argument is without merit. The trial court found that WH had a right to be in a stable household with permanence and the ability to grow, bond, and have a familial relationship. In light of the foregoing, there was not clear error in the trial court's conclusion that termination of respondent's parental rights was in WH's best interests. See MCL 712A.19b(5); *In re VanDalen*, 293 Mich App at 139.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Karen M. Fort Hood
/s/ Thomas C. Cameron