*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re M. A. STONE, Minor.

UNPUBLISHED
June 13, 2024

No. 368727
Genesee Circuit Court
Family Division
LC No. 10-127086-NA

Before: MALDONADO, P.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order terminating her parental rights to her minor child, MS.[1]  On appeal, respondent-mother argues that the trial court erred when it found that statutory grounds existed to support termination and that terminating her parental rights was in MS's best interests.  Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In September 2021, petitioner Department of Health and Human Services ("DHHS") filed a petition for MS's removal from respondent-mother's care.  DHHS alleged that it had received reports that respondent-mother was abusing substances, lived in unsanitary conditions, and left MS home alone on several occasions.  Respondent-mother admitted to using substances, and DHHS learned that respondent-mother was living in a property owned by the Genesee County Land Bank that was not supposed to be inhabited.  DHHS also learned from Genesee County 911 records that almost 100 calls had been made regarding respondent-mother's house, which many callers described as a "crack house."  DHHS also explained that respondent-mother had a history with Child Protective Services and a criminal history that included several drug-related offenses.  The trial court issued an ex parte order to take MS into temporary protective custody.

The trial court subsequently exercised its jurisdiction and ordered respondent-mother to participate in and benefit from substance-abuse treatment, random drug screens, mental-health services, and parenting

---

[1] Respondent-father's parental rights were also terminated by the trial court during the proceedings, but he is not a party to this appeal.

classes. The court also ordered respondent-mother to complete a psychological evaluation and follow recommendations, sign all necessary releases for her services, obtain appropriate housing and a legal source of income, and remain in contact with DHHS. While respondent-mother initially engaged in parenting time with MS, her parenting time was suspended throughout most of the proceedings because of respondent-mother's inappropriate behavior and overall poor compliance with the service plan.

Petitioner subsequently petitioned the trial court to terminate respondent-mother's parental rights to MS under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). At the termination hearing, respondent-mother's caseworker testified that she had not made progress or benefited from services, and she testified that the barriers to reunification that existed at the outset of the case still existed at the time of the hearing. The trial court found that DHHS had established by clear and convincing evidence that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), and that termination of respondent's parental rights was in MS's best interests. This appeal followed.

## II. STANDARDS OF REVIEW

"We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest under MCL 712A.19b(5)." *In re Olive/Metts Minors*, 297 Mich App at 40 (quotation marks and citation omitted). A finding is clearly erroneous if "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id*. at 41 (quotation marks and citation omitted).

## III. STATUTORY GROUNDS

Respondent-mother argues that the trial court clearly erred by finding the statutory grounds supporting termination of her parental rights by clear and convincing evidence. We find no clear error warranting reversal.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted). A court may terminate a parent's rights to a child under MCL 712A.19b(3)(c)(*i*) if:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Termination under (c)(*i*) is appropriate when "the totality of the evidence" supports a finding that the parent "had not accomplished any meaningful change in the conditions" that led to the court taking jurisdiction over the minor child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

The conditions that led to adjudication in this case were primarily respondent-mother's substance abuse and mental-health issues, although her lack of parenting skills, housing instability, and lack of employment or income were also concerns. DHHS offered respondent-mother numerous services to allow her to reunite with MS throughout the pendency of the case, but she failed to participate in and benefit from most, if not all, of the services. Respondent-mother failed to complete her psychological evaluation, did not participate in any mental-health services, and testified that she did not believe she had any mental-health issues. Respondent-mother also only minimally participated in substance-abuse treatment services and attended outpatient treatment for brief periods of time. Respondent-mother's caseworker did not believe she had benefited from the services offered to her because of her noncompliance or minimal attendance, especially in light of respondent-mother's prior contacts with DHHS. Respondent-mother missed a substantial amount of her drug screens and consistently tested positive for cocaine and fentanyl when she did comply. While respondent-mother did obtain different housing, she did not allow her caseworker to assess if it was safe and appropriate for MS. Respondent-mother also failed to address her lack of legal income.

Respondent-mother testified that she attended parenting classes offered by DHHS but had not provided her caseworker with documentation to verify her attendance. Respondent-mother's parenting time was also suspended because of her behavior during visits. The caseworker testified that during supervised visits with MS, respondent-mother was verbally and physically aggressive toward DHHS staff, was verbally aggressive toward MS's foster parents, repeatedly accused DHHS staff of "witchcraft," fell asleep, and repeatedly discussed details of the case with MS.

The totality of the evidence supported the trial court's finding that respondent-mother did not accomplish any meaningful change in the conditions that led to the court taking jurisdiction over MS. See *In re Williams*, 286 Mich App at 272. Accordingly, the trial court did not clearly err when it concluded that there was no reasonable likelihood that respondent-mother would rectify the conditions that led to adjudication within a reasonable time, given the child's age. See MCL 712A.19b(3)(c)(*i*).[2]

## III. BEST-INTERESTS DETERMINATION

Respondent-mother also argues that the trial court clearly erred by finding that termination of her parental rights was in MS's best interests. We disagree.

"If the court determines that one or more statutory grounds for termination exist and that termination is in the child's best interests, the court must enter an order terminating the respondent's parental rights and order that additional efforts for reunification not be made." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court should "focus on the child rather than the parent" when determining whether termination is in the best interests of a child. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). In making a best-interests determination, the court may consider factors such as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency,

---

[2] Because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, we need not address the trial court's additional statutory bases for terminating respondent-mother's parental rights.

-3-

stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

Respondent-mother argues that she had a strong bond with MS that made termination in this case inappropriate. See *Olive/Metts*, 297 Mich App at 41-42. While the record supports her argument that respondent-mother bonded with MS, the record also demonstrates that respondent-mother's behavior made MS feel uncomfortable and unsafe. When respondent-mother's parenting time was not suspended, she acted inappropriately and behaved erratically. Respondent-mother's parenting time was ultimately suspended in May 2022, and visitations never resumed. At the time of termination, MS regularly worried that respondent-mother was dead because he had not seen her in more than a year. Moreover, to the extent that respondent-mother had a bond with MS at the time of termination, the record shows that the bond was not necessarily healthy for MS. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2002), overruled on other grounds *In re Sanders*, 495 Mich 394 (2014) (holding that the fact that there was a "serious dispute on the record concerning whether [the respondent] had a healthy bond of any sort with her children" supported the conclusion that termination of her parental rights was in the children's best interests).

Additionally, the parent-child bond between respondent-mother and MS was only one factor considered by the trial court. See *Olive/Metts*, 297 Mich App at 41. The trial court considered respondent-mother's failure to comply with her service plan and her inability to act appropriately during parenting time. See *In re White*, 303 Mich App at 714. The court also considered MS's age and the fact that MS's chances of being adopted were very good. The court considered the fact that MS had been in foster care, not a relative placement, and considered the significant period of time that MS had been in foster care. The court correctly found that MS needed permanency and stability, which respondent-mother could not offer. The record reflects that MS was supported and encouraged in his placement, had bonded with his foster parents, and was thriving in their care. For these reasons, the trial court did not clearly err by finding that termination of respondent-mother's parental rights was in MS's best interests.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Kirsten Frank Kelly
/s/ James Robert Redford