*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. M. NUYEN, Minor.

UNPUBLISHED
January 27, 2022

No. 357634
Kalamazoo Circuit Court
Family Division
LC No. 2019-000429-NA

Before: CAMERON, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals the trial court's order terminating her parental rights to her minor child, CMN, under MCL 712A.19b(3)(a)(*ii*) (parent deserted the child for 91 days or more), (c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions existed that could have caused the child to come into the court's jurisdiction), and (j) (reasonable likelihood that the child will be harmed if returned to the parent's care). We affirm.

## I. BACKGROUND

In November 2019, a petition was filed with respect to CMN and ALN, who is CMN's older sister. In relevant part, the petition alleged that respondent "refus[ed] to provide care and custody" to the children, that respondent had "untreated mental health issues," and that respondent was using a substance that caused hallucinations. The petition further alleged that a representative from Child Protective Services (CPS) had observed respondent making "violent threats" toward CMN, that respondent had failed to provide the children with food, that respondent refused to participate in services, and that respondent refused to return home until the children were removed from the home. The petition requested that the trial court remove the children, who were both teenagers at the time, from respondent's care and custody and exercise jurisdiction. Following a preliminary hearing, which respondent did not attend, the petition was authorized and the children were placed in foster care. The Department of Health and Human Services (DHHS) had discretion to permit respondent to have unsupervised visits with the children.

In January 2020, the adjudication trial was held. Respondent did not attend despite being provided with notice. After hearing testimony, the trial court exercised jurisdiction and ordered that reasonable efforts toward reunification be made. Respondent failed to participate in most services, tested positive for illegal substances at times, was charged with a theft-related crime, and

failed to submit to psychological and substance abuse assessments. Respondent also failed to attend a majority of her parenting times, failed to attend several review hearings and permanency planning hearings, refused to provide information concerning her new boyfriend, and failed to maintain contact with DHHS and CMN. The caseworker was also not permitted to view the home that respondent shared with her new boyfriend, and respondent failed to provide proof of income or proof that she was attempting to obtain employment. In January 2021, the permanency planning goal with respect to CMN was changed to termination, and the permanency planning goal with respect to ALN was changed to another planned permanent living arrangement (APPLA).

In May 2021, the termination hearing with respect to CMN was held. A caseworker testified about respondent's lack of participation during the proceeding. After the close of proofs, the trial court found that reasonable reunification efforts were made but that respondent had failed to participate in services. The trial court also concluded that statutory grounds existed to support the termination of respondent's parental rights to CMN and that termination of respondent's parental rights was in CMN's best interests. This appeal followed.

## II. ANALYSIS

Respondent argues that the trial court clearly erred by finding that termination of her parental rights was in CMN's best interests. We disagree.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the [child's] best interests." [1] *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). We review the trial court's best-interest determination for clear error. *Id.*

This Court focuses on *the child*—not the parent—when reviewing best interests. *In re Trejo Minors*, 462 Mich 341, 356; 612 NW2d 407 (2000). "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted).

> [T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citation omitted).]

---

[1] Respondent concedes that the trial court did not clearly err by concluding that statutory grounds existed to support termination.

Although respondent argues on appeal that CMN wanted to return to respondent's care at the time of termination, the record does not support that respondent had a healthy bond with CMN. CMN was removed from respondent's care because respondent refused to participate in services to avoid removal. Evidence also supports that respondent and CMN had engaged in physical altercations before removal occurred and that respondent had failed to adequately provide for CMN. Respondent did not attend the preliminary hearing despite being provided with notice, and a CPS worker testified that respondent indicated that she did not "want" CMN. After CMN was taken into care, she refused to have contact with respondent for a period of time. While CMN later consented to visitation with respondent, respondent only participated in five of the 42 offered visitations. Fifteen of these visitations did not occur because CMN refused to see respondent, and CMN sometimes had panic attacks when confronted with the possibility of returning to respondent's care. Respondent ceased contact with DHHS and CMN for extended periods of time during the proceeding and, at the time of termination, respondent had not had "authorized parenting times" with CMN since September 2020. Thus, to the extent that respondent shared a bond with CMN at the time of termination, the bond was not healthy. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2002), overruled on other grounds by *In re Sanders*, 495 Mich 394 (2014) (holding that the fact that there was a "serious dispute" on the record concerning whether the respondent had "a healthy bond" with her children supported that termination of her parental rights was in the children's best interests).

Additionally, the parent-child bond is only one factor for the trial court to consider. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). In this case, respondent consistently failed to participate in services and demonstrated an inability to provide stability to CMN. There is also no indication that respondent would be able to effectively parent CMN, who had mental health issues and who considered respondent to be a friend. While respondent appears to argue on appeal that CMN's issues are the result of deficiencies on the part of her father, the fact of the matter remains that respondent refused to address any of her issues during the 17-month proceeding and denied substance use despite testing positive for amphetamines and methamphetamines. Meanwhile, CMN was doing well in her placement. Although CMN sometimes indicated that she did not want to be adopted, the record supports that she was bonded to her foster parents and that she referred to them as "mom" and "dad." Importantly, CMN had been placed with the foster parents for a majority of the proceeding, and they expressed a desire to adopt CMN.

While respondent argues that a guardianship or APPLA was in CMN's best interests, we disagree. The trial court found that these options were not appropriate, and this was not an erroneous conclusion. The record reveals that a guardianship would not provide CMN with the stability that she desperately required. Moreover, while the permanency planning goal was changed to APPLA with respect to ALN, ALN was 17 years old at the time of termination. CMN was only 15 years old. The record does not support that APPLA would have been in CMN's best interests given that CMN required extensive discipline and guidance, which her foster parents were

capable of providing to her. For these reasons, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in CMN's best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro