*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
July 18, 2024

*In re* BROCKER, Minors.

No. 368747
Cass Circuit Court
Family Division
LC No. 22-000097-NA

Before: CAMERON, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Respondent-father appeals of right from the trial court's order terminating his and respondent-mother's parental rights to NB and SB under MCL 712A.19b(3)(c)(*i*), (g), and (j).[1] For reasons stated herein, we affirm.

## I. BASIC FACTS

NB and SB[2] were removed from respondents' home on an emergency basis. Petitioner, the Department of Health and Human Services (DHHS), alleged several instances of improper supervision, including allegations that, on several occasions, NB "was seen running around outside, naked and unattended by his parents . . . ." Petitioner also alleged one incident in which NB and SB "knocked the screen out of a second-story window and were seen hanging from the sill, and another where the children jumped out of the second-story window." In general, petitioner alleged that the children were not being properly supervised or looked after by any adult. The trial court took jurisdiction of the children after an adjudication trial, and a panel of this Court affirmed that decision in an earlier appeal.[3] For the next year, respondent refused to participate in services to determine whether substance abuse was a barrier to reunification; refused to participate in

---

[1] Respondent-mother is not a party to this appeal; therefore, the singular "respondent" refers only to respondent-father.

[2] Two other children were also removed, but they are not subjects of this appeal.

[3] *In re Shukait/Brocker Minors*, unpublished per curiam opinion of the Court of Appeals, issued June 29, 2023 (Docket Nos. 363899 and 363903), p 9.

mental-health services, except for joint counseling with respondent-mother, in which respondent showed no progress; refused to sign any releases that would allow his foster-care workers to substantiate his claims that he had passed drug screens and been rejected for services by Woodlands Behavioral Healthcare; and refused to substantiate his income. After hearing testimony at a termination hearing held approximately 14 months after the children were removed, the trial court terminated respondents' parental rights to NB and SB.

## II. REASONABLE EFFORTS

### A. STANDARD OF REVIEW

Respondent first asserts that the trial court erred by finding that petitioner made reasonable efforts toward reunification when a psychologist's recommendation regarding the content of therapy was not followed. Because respondent did not raise this issue in the trial court, it is not preserved for appellate review. See *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021). We review unpreserved claims of errors under the plain error standard. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). Error affects a respondent's substantial rights if it affects the outcome of the proceedings. *Id*.

### B. ANALYSIS

"Under Michigan's Probate Code, the [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). To that end, the DHHS "must create a case service plan outlining the steps that it and the parent will take to rectify the conditions that led to court intervention and to achieve reunification." *In re Hicks/Brown*, 500 Mich at 85-86. Petitioner also has obligations under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*., "that dovetail with its obligations under the Probate Code." *Id*. at 86. Petitioner cannot meet its obligation to provide reasonable services if it does not accommodate a disability under the ADA. *Id*. When challenging the services offered on the basis that petitioner violated the ADA, a respondent must establish that he or she would have fared better if other services had been offered. *In re Sanborn*, 337 Mich App at 266. "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

Petitioner provided numerous services to prevent the removal of the children from respondent's home and the termination of his parental rights. Respondent challenges only the mental-health services that petitioner provided. Dr. Randall Haugen conducted a psychological evaluation of respondent and recommended intensive conjoint therapy that would include "a good understanding of [respondent's] neurological deficits and efforts made to work with this during the conjoint therapy process." Respondent asserts that the trial court erred by finding reasonable efforts because the notes of his therapist, Rick Lewis, did not reveal that Lewis discussed with respondent how his neurological deficits impacted his ability to parent. However, respondent does not provide any substantive argument regarding how the services that Lewis actually provided were not reasonable or appropriate under the circumstances. See *In re Sanborn*, 337 Mich App

at 265. Lewis's notes reveal that he discussed emotions with respondents, the role that emotions play in interactions, and how to prevent those emotions from worsening a situation. At the termination hearing, Lewis gave an example of how he worked with respondent to help him recognize that becoming upset about petitioner's request for drug screens was a "knee-jerk" reaction and to encourage him to come up with more appropriate ways to deal with the particular situation. Although Lewis did not explain to respondent that his sudden anger might be the result of "neurological deficits," his notes and his testimony show that he was helping respondent develop appropriate strategies to recognize and cope with such deficits.

Petitioner also referred respondent to Woodlands, where he could have undergone a mental-health assessment and received individual therapy and medication if necessary. Respondent consistently refused to take advantage of the mental-health services that petitioner repeatedly offered him to address the mental-health barriers to reunification with his children, insisting, without verification, that he had been to Woodlands, had been told that he did not need their services, and had "passed" several mental-health exams. Respondent does not establish on appeal that he would have participated and fared better if other mental-health services had been offered. See *id*.

Accordingly, respondent has not shown that the trial court plainly erred by finding that petitioner offered reasonable reunification services, nor has he shown that petitioner violated the ADA when it terminated his parental rights. See *id*. at 263-266.

## III. STATUTORY GROUNDS

### A. STANDARD OF REVIEW

Respondent next contends that the trial court erred by finding that substance abuse was a barrier to reunification on the basis of legally admissible evidence. We review "for clear error . . . the court's decision that a ground for termination has been proven by clear and convincing evidence . . . ." *In re Trejo Minors*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). See also MCR 3.977(K). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a "definite and firm conviction" that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010) (quotation marks and citation omitted). To be clearly erroneous, a decision must be "more than maybe or probably wrong." *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999) (quotation marks and citation omitted). "If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of the respondent's parental rights." *In re Sanborn*, 337 Mich App at 273.

### B. ANALYSIS

The trial court found clear and convincing evidence establishing grounds for termination under MCL 712A.19b(3)(c)(*i*), (3)(g), and (3)(j).[4] MCL 712A.19b(3)(c)(*i*) provides grounds for

---

[4] Respondent challenges the trial court's finding that MCL 712A.19b(3)(c)(*i*) supported termination but does not challenge the trial court's findings that MCL 712A.19b(3)(g) and (j) also

termination when "182 or more days have elapsed since the issuance of an initial dispositional order," and the trial court finds by clear and convincing evidence that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

The barriers to respondent's reunification with his children identified at the initial disposition hearing included safety issues arising from lack of supervision, substance-abuse concerns, and lack of resources. Substance abuse was a concern because respondent refused to cooperate with drug screening to verify whether substance abuse was a barrier. During his psychological evaluation, respondent told Dr. Haugen that he did not take drugs and that he did not have to screen as part of his service plan. At the same time, respondent said that he smoked marijuana regularly and had been micro dosing (with psilocybin mushrooms) for years.

To address the barriers to reunification, petitioner referred respondents to Lewis for joint therapy, which included parenting training. Lewis testified at the termination hearing that none of the therapeutic goals were met. Petitioner also referred respondent to Woodlands for a substance-abuse assessment, mental-health intake, and psychiatrist services, and to Michiana Drug Testing Center for drug screens. Respondent consistently refused to engage in any of these services or to verify his claim, or to provide releases that would allow his caseworkers to verify his claim, that he had taken and passed drug screens and that he had been rejected for services at Woodlands. As to income, although respondent acknowledged to Dr. Haugen and to Lewis that he was struggling financially, and he protested about the expense of driving weekly to parenting-time, he claimed an annual income as high as $160,000, and insisted that the values of his truck, his house, and the vehicles on his property belied the lack of employment or of money. Further, as the trial court pointed out, although respondent had housing at the start of the case, by the time of the termination hearing, respondent was living in a camper. Moreover, respondent's parenting time had not progressed to unsupervised, let alone to overnight, parenting time.

More than 182 days after the children's removal the conditions that led to adjudication continued to exist. Lewis's therapy notes indicated that respondent remained convinced that he had done nothing to cause the removal of his children and that petitioner had unjustly removed his children from him. Respondent had not addressed the barriers to reunification by showing that he was progressing toward being able to properly supervise the children, by addressing any of the issues that may have prevented him from exercising proper supervision, or by presenting evidence of income sufficient to meet his and the children's basic needs. Further, he acknowledged to the trial court that he would need to find suitable housing before the children could be returned.

Given respondent's refusal to participate in services or to provide documentation or releases showing that he had already participated in services, his lack of insight regarding why his children were in temporary foster care, and his failure to progress to unsupervised parenting time,

---

supported termination. Because respondent has failed to challenge the trial court's findings under MCL 712A.19b(3)(g) and (j), he has abandoned any error relative to those statutory grounds. See *Riemer v Johnson*, 311 Mich App 632, 653; 876 NW2d 279 (2015). And, because only one ground for termination need be established to terminate a respondent's parental rights, *In re Trejo*, 462 Mich at 360, we need not address whether MCL 712A.19b(3)(g) and (j) also support termination.

there seemed "no reasonable likelihood that the conditions [would] be rectified within a reasonable time considering the child[ren]'s age[s]." MCL 712A.19b(3)(c)(*i*). For the foregoing reasons, the trial court did not clearly err by finding that clear and convincing evidence established the statutory ground to terminate respondent's parental rights to NB and SB under MCL 712A.19b(3)(c)(*i*).

Respondent nevertheless contends that substance abuse was not one of the conditions that led to the boys' removal and, therefore, that substance abuse was a new or different circumstance and had to be supported by legally admissible evidence. Contrary to respondent's argument, the trial court did not make any findings regarding substance abuse that were relevant to its termination decision. The trial court identified the failure to rectify conditions—regardless of the underlying cause of the failure—as providing grounds for termination. The trial court suspected that substance abuse contributed to respondent's inability to overcome the barriers to reunification, but the court's observations about substance abuse came after the trial court placed on the record its statutory-grounds and best-interest findings. Regardless of its suspicions, the court did not make any findings regarding substance abuse. In sum, respondent's argument that the trial court found that substance abuse was a barrier to reunification is not supported by the record, and his argument that the trial court attributed to substance abuse respondent's failure to rectify the conditions that led to the temporary removal of the children does not undermine the trial court's finding that clear and convincing established the statutory ground to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*).[5]

## IV. ASSISTANCE OF COUNSEL

## A. STANDARD OF REVIEW

Lastly, respondent contends that the trial court erred by allowing him to represent himself when his waiver of counsel was equivocal, and was not made knowingly, intelligently, and voluntarily because the trial court did not apprise respondent of the dangers of self-representation. We find no error requiring reversal. "Whether proceedings complied with a party's right to due process presents a constitutional law that [this Court] reviews de novo." *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009). However, as stated earlier, we review claims of unpreserved errors for plain error affecting a respondent's substantial rights. *In re Sanborn*, 337 Mich App at 258.

---

[5] Respondent does not argue that the trial court erred by finding that termination of his parental rights was in the children's best interests. As such, we presume that the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341. Regardless, given the record before us, the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests when it properly considered respondent's history and inappropriate parenting techniques, the bond between respondent and the children, the visitation history, the children's need for permanence, the children's ages and particular needs, the advantages of the foster home, the children's well-being while in care, and the possibility of adoption.

## B. ANALYSIS

A respondent in a termination proceeding has a constitutional and statutory right to the assistance of counsel. *In re Williams*, 286 Mich App 253, 275-276; 779 NW2d 286 (2009). MCL 712A.17c(4) requires a trial court to advise respondents at their first court appearance that they have "[t]he right to an attorney at each stage of the proceeding"; that they have the right to a court-appointed attorney if they cannot afford to retain an attorney; and that, if they are not represented by an attorney, they have "the right to request and receive a court-appointed attorney at a later proceeding." MCL 712A.17c(5) requires a trial court to appoint an attorney if it "appear[ed] to the court . . . that the respondent want[ed] an attorney and [was] financially unable to retain an attorney."

MCR 3.915(B) provides the procedures to implement and to waive this statutory right to an attorney. MCR 3.915(B)(1)(b) provides that a trial court "shall appoint" an attorney to represent a respondent at any hearing . . . conducted under these rules" if (1) the respondent requests an attorney, and (2) "it appears to the court, following an examination of the record, through written financial statements, or otherwise, that the respondent is financially unable to retain an attorney." A trial court is under no obligation to appoint an attorney without affirmative action on the part of the respondent. *In re Hall*, 188 Mich App 217, 218; 469 NW2d 56 (1991) (holding that MCR 3.915(B) [formerly, MCR 5.915(B)] "requires affirmative action on the part of the respondent to trigger the appointment and continuation of appointed counsel in all hearings which may affect the respondent's parental rights"). MCR 3.915(B)(1)(c) provides that a respondent may waive the right to the assistance of an attorney. See also MCL 712A.17c(6) (stating in relevant part that a respondent "may waive his or her right to an attorney").

Respondent does not claim that he was not advised of his right to an attorney and of his right to a court-appointed attorney if he could not afford one. Respondent was appointed an attorney at the preliminary hearing. He expressed dissatisfaction with his court-appointed attorney when he stated at the initial disposition hearing that he had to pay $5,000 for "a real lawyer" because "these guys aren't doing it." On February 1, respondent's court-appointed attorney moved to withdraw because respondent had "fired" him.

Respondent indicated that he wanted his court-appointed attorney to withdraw because he had not responded to the e-mails that respondent sent his attorney detailing all the errors of the DHHS and because he was urging respondent to comply with services. Respondent indicated that he intended to hire his own attorney. The trial court informed respondent that if he lost his court-appointed attorney, then it did not have a replacement attorney to appoint to him because its roster was "very low." When the court asked respondent if he was going to hire an attorney or represent himself, respondent replied that he would "stand and represent" himself. The trial court again told respondent that if his court-appointed attorney withdrew, then it could not give him another court-appointed attorney because its "roster was very low right now," and it again asked him whether he was going to try to find a lawyer or represent himself. Respondent again replied that he was going to represent himself. The trial court granted counsel's motion to withdraw.

Respondent began the next review hearing by asking for an adjournment to be able to prepare for the hearing. When the trial court asked respondent if he still planned to hire his own attorney, respondent replied that that was his intention, but he was having a hard time affording

one.  The court informed respondent three times that he could request an attorney and provide any new information that he wished the trial court to consider with respect to that request.  Respondent maintained that he intended to hire his own attorney and that he was representing himself at the July 17 hearing, and he never requested a court-appointed attorney thereafter.

Respondent did not move for a court-appointed attorney, and the trial court was not obligated to provide him with an attorney sua sponte.  See *In re Hall*, 188 Mich App at 218.  Respondent's contention on appeal that the trial court essentially gave him a choice between hiring an attorney or representing himself is not entirely accurate.  These were the options that respondent pursued, but the trial court gave him a third option, i.e., he could apply for a court-appointed attorney.  Respondent could be said to have relinquished his right to an attorney when he confirmed that he wanted his initial court-appointed attorney to withdraw, and he never retained an attorney or asked the trial court to appoint him one.  See *id*. at 222.

Respondent also contends that his waiver was not valid because the trial court did not discuss the dangers of self-representation.  Respondent relies for support on *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2002), in which this Court stated that "the principles of effective assistance of counsel developed in the context of criminal law appl[ied] by analogy in child protective proceedings," to waivers of the right to counsel in child protective proceedings.  *In re CR* did not involve the requirement for trial courts to inform defendants about the dangers of self-representation before they waived their right to the assistance of an attorney, MCR 6.005(D)(1), nor has respondent explained how this decision provides authority for the extension of that requirement to waivers of the right to an attorney in child protective proceedings.  Respondent may not simply announce his position and then leave it to this Court to "unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."  *ER Drugs v Dep't of Health & Human Servs*, 341 Mich App 133, 146-147; 988 NW2d 826 (2022) (quotation marks and citation omitted).

For the foregoing reasons, we conclude that respondent has not established that the trial court erroneously deprived him of the assistance of an attorney.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates