Per Curiam.
 

 In these consolidated appeals, respondents Sherry Bowman and Chevy Richardson appeal as of right from an order terminating their parental rights to the minor children pursuant to MCL 712A.19b(3)(b)(i), (c)(i), (c)(ii), and (g). We affirm.
 

 I. BASIC FACTS AND PROCEDURAL HISTORY
 

 The Family Independence Agency (fia) intervened in this case after it became concerned that Bowman was not caring for the children because of her “excessive and ongoing drinking and drug abuse.” Fia caseworkers also believed that Bowman had previously abused and neglected her children. They noted that ALR had tested positive for alcohol and cocaine at birth and both parents had lengthy criminal histories, which had forced the children to reside with other relatives on occasion. Previous services offered to Bowman to improve her parenting skills had made
 
 *188
 
 no significant improvement in her ability to care for her children or remain sober.
 

 After the fta filed the original petition asserting the allegations above, in August 1998, the parents and the fia reached an agreement on how to proceed. The agreement provided that (1) the FIA would dismiss the allegations concerning Richardson, (2) Bowman would enter a no-contest plea to the allegations in the petition, (3) the family court would take jurisdiction over the children, and (4) the children would be placed with Richardson subject to a variety of conditions, including his participation in drug testing and other fia services. When the parties placed this agreement on the record on the day set for the adjudication, Alan Rapoport, the attorney representing the children, indicated that he found the agreement acceptable. The family court immediately advised Bowman of her rights and heard testimony from a child protective services worker, who testified about the allegations in the petition regarding Bowman. The prosecutor representing the fia also introduced into evidence medical records documenting instances of Bowman’s drug and alcohol abuse and ALR’s health problems. The family court then accepted Bowman’s no-contest plea in accordance with the agreement, ruling from the bench:
 

 Very well, the Court is satisfied and does accept the plea of no contest by Sherry Richardson [sic], to the complaint. The Court does take jurisdiction of this matter, and of the parties, and of the minor children.
 
 The Court will dismiss the petition in so far as it relates to Mr. Chevy Richardson.
 
 The children are referred, or continued in the placement with fia, which I understand has now agreed to switch the
 
 *189
 
 children[’s placement] to Chevy Richardson. Chevy Richardson, however, will submit to, is that random drug tests?
 
 [1]
 

 Ms. Roach
 

 [2]
 

 Random drug testing, and we ask for treatment, as well as Families First placement.
 

 The Court:
 
 Treatment, Families First. Mr. Richardson, where do you live now?
 

 Mr. Richardson:
 
 232 Lester.
 

 The Court:
 
 All right, you’re further ordered to continue to reside there until further order of the court. So, you’ll seek an order of this court before you move to some other residence. Have I missed anything, Ms. Roach?
 

 Ms. Roach:
 
 I believe the Court has covered all of the essential elements, your Honor.
 

 The Court:
 
 Mr. MacAyeal?
 
 [3]
 

 Mr. MacAyeal:
 
 I think that covers it, your Honor.
 

 Mr Rapoport:
 
 I would agree, your Honor.
 

 JkTr.
 
 Niedzwiecki:
 

 [4]
 

 I agree.
 

 The Court:
 
 Very well, who’s going to prepare that order?
 

 Mr. Rapoport:
 
 Ordinarily the court does.
 

 The Court:
 
 Court will prepare that order. Court would be happy to prepare that order. You’ll all be sent copies.
 

 The order the family court subsequently entered indicated that it had found that the children came within its jurisdiction and ordered the fia to place them with Richardson. Tracking the terms of the parties’ agreement closely, the family court ordered Richardson to “submit to random drug screening at the request of fia,” indicated that the fia would refer the family to the Families First program, and scheduled the dispositional hearing. Though the order did not use any language specifically dismissing Richardson as a respondent in the proceedings, it stated that the
 
 *190
 
 family court had made factual findings and legal conclusions on the record at the adjudication, incorporating those findings and conclusions—including Richardson’s dismissal—by reference. Both parents subsequently entered into parenting agreements with the fia. in which they pledged to take advantage of a variety of services, improve their parenting skills, provide a healthy environment for the children, obtain employment, and protect LB from further sexual abuse.
 
 [5]
 

 Unfortunately, this arrangement did not work well. In one instance, caseworkers observed Bowman unconscious, lying in the doorway to her home, smelling of alcohol. The children were inside the home, unattended and crying, and Richardson was nowhere to be found. When Richardson finally returned home, he admitted that Bowman had been drinking, he refused to submit to a Breathalyzer test, and was uncooperative with the police who had responded to the situation. LB would not discuss this incident with caseworkers because she was afraid that Richardson, her stepfather, would “beat her butt.” At the emergency review hearing, the parents refused to acknowledge the continuing problems in their home. The family court allowed the children to remain with Richardson, but ordered Bowman out of the home and ordered both parents to engage in drug treatment, to submit to hair follicle tests to detect drug use, and to comply with the parenting agreement.
 

 The problems did not end with this one incident. On a separate occasion, two caseworkers made an unannounced visit to the home to check on the chil
 
 *191
 
 dren. Although they could hear the children inside, no one would open the door. Finally, when one of the children let the caseworkers into the home, they found the home in disarray, dirty, with no obvious adult supervision for the children. The caseworkers found Richardson’s ninety-three-year-old grandmother sleeping in another room, but she was difficult to rouse and was disoriented when she finally did awaken.
 

 In March 1999, Bowman was sentenced to four months in prison for an assault on two police officers, a crime she had committed the previous summer. That same month the FIA removed the children from Richardson’s care.
 

 Richardson also refused to comply with the parenting agreement and the family court’s drug testing order, going so far as to shave all the hair on his body before he appeared for a hair follicle test. Richardson never obtained employment and the condition of the home did not improve. In summer 1999, LB alleged that Richardson had sexually abused her, but Richardson told her not to speak with the caseworkers about it. LB eventually told caseworkers that she was afraid of Richardson and that she did not want to see him anymore. On the times he did submit to testing, Richardson continued to test positive for drugs. Not only did Richardson appear under the influence of drugs or alcohol during one visit with the children, but a drug test as late as January 2000 revealed that he had used marijuana.
 

 The fia filed a termination petition in February 2000, essentially alleging that all the help offered to the parents had made no difference in their ability to care for their children. Further, the parents’ substance abuse problems had continued, they had never
 
 *192
 
 acknowledged that LB had been sexually abused, Richardson had threatened the children to keep them from talking to caseworkers, and the parents had never complied with the parenting agreement.
 

 The fia caseworker who filed the termination petition did not believe that any additional services or any additional time would make it safe for the children to return to their parents, which made termination in their best interests. The fia visitation coordinator reported that the children had mentioned that Richardson was threatening. She had also personally observed that Bowman was unresponsive to the children during visits and that she did not have a “healthy” bond with them.
 

 A psychologist who had counseled the children and Richardson testified on behalf of the fia, noting that the children all exhibited symptoms of severe emotional problems related to abuse and neglect and that they reported violence, sexual abuse, and drug use in their home. The psychologist stated that Richardson had admitted selling drugs out of his home, he had poor judgment, and he lacked the capacity to take responsibility for his problems or his family’s problems. She did not believe that Richardson would be able to care safely for the children.
 

 As for Bowman, the psychologist recounted that Bowman had appeared for an evaluation but left before completing the interview, shouting expletives as she walked out the door. Psychological testing revealed that Bowman had only a “very poor” prognosis for being able to change. The psychologist also supported termination as the best course of action for the children, especially in light of the parents’ inability to make meaningful change within a reasonable amount of time, if at all.
 

 
 *193
 
 In contrast to this testimony, Bowman and Richardson both testified that they had their respective substance abuse problems under control. Though Richardson had tested positive for cocaine in March 2000, he denied using that drug before that time. Richardson also said that he had found a job. Richardson conceded that he and Bowman were living with his mother, but said that they would soon have their own home. Bowman’s adult daughter and mother-in-law added that they believed that the children loved and missed their parents.
 

 The family court made extensive findings of fact. Reducing the findings of fact to their most basic elements, the family court concluded that Bowman and Richardson loved their children, but that their chronic substance abuse problems prevented them from providing proper care and custody for their children on repeated occasions and they had no prospect for improvement within a reasonable amount of time given the children’s ages. The family court determined that these problems, among others, led to the adjudication in the case, the case had been pending in excess of 182 days, and there was no reasonable likelihood that the parents would be able to become better parents within a reasonable amount of time. The family court rejected the fia’s argument that the parents could be held responsible for sexual abuse committed against LB after the court had placed the children in foster care. The family court nevertheless found that LB’s allegations that Richardson had abused her and the caseworkers’ reports of the parents’ threatening behavior was sufficient to conclude that the children or one of their siblings had suffered abuse and there was a reasonable likelihood that returning them to their parents would lead to harm.
 
 *194
 
 The family court concluded that termination was in the children’s best interests.
 

 On appeal, Bowman challenges the clear and convincing nature of the evidence supporting these statutory grounds for termination, as well as whether termination was in her children’s best interests. She also argues that her trial counsel was ineffective. Richardson’s arguments on appeal are somewhat more complex. He contends that the family court’s order terminating his parental rights must be reversed directly and on due process grounds because he was not a respondent in the proceedings at the adjudication and the family court had never determined that any of the allegations concerning him in the any of the petitions were proved by legally admissible evidence. Alternatively, he contends that his appointed counsel was ineffective for not challenging the family court’s failure to use legally admissible evidence to adjudicate the allegations against him.
 

 H. STATUTORY GROUNDS FOR TERMINATING BOWMAN’S PARENTAL RIGHTS
 

 A. STANDARD OF REVIEW
 

 Appellate courts review for clear error a family court’s decision to terminate parental rights.
 
 [6]
 

 B. CLEAR AND CONVINCING EVIDENCE
 

 The family court must find clear and convincing evidence on the record proving that at least one statutory ground for termination exists before it termi
 
 *195
 
 nates parental rights.
 
 [7]
 
 Once there is clear and convincing evidence of at least one statutory ground for termination, the family court “must issue an order terminating parental rights unless there exists clear evidence, on the whole record, that termination is not in the child’s best interests.”
 
 [8]
 

 Bowman challenges the family court’s findings that evidence of each of these statutory grounds merited termination of parental rights because she had made progress in her personal development by becoming sober and attending parenting classes as well as Alcoholics Anonymous meetings. She fails to make the connection between her improvement in these areas and the statutory grounds for termination. However, we interpret Bowman’s argument to mean that the evidence did not clearly and convincingly reveal that she had not and would not be able to make sufficient personal progress within a reasonable time to give her children a good home with appropriate care considering her children’s ages.
 
 [9]
 
 Similarly, we interpret her argument to challenge the clear and convincing nature of the evidence that her children would be harmed if returned to her because she had not improved enough as a parent.
 
 [10]
 

 By the time the family court terminated her parental rights, Bowman’s children had been in foster care for more than a year. At that time there was insufficient evidence to conclude that, whatever recent progress she might have made in controlling her sub
 
 *196
 
 stance abuse problem, Bowman would remain clean and sober in the future. Her substance abuse was integral to why the fia intervened in this case in the first place. This was not a benign problem that Bowman kept from affecting her children. The children were firsthand observers of their mother’s severe and continuing substance abuse, which affected her ability to provide the most rudimentary care the children needed. Though Bowman attended some parenting classes and other services, there is no real evidence that she benefited from them in any way. Further, at the time the family court terminated her parental rights, Bowman did not have her own home and, evidently, was not able to have her children five with her. Accordingly, we do not see clear error in the family court’s determination that there was sufficient evidence that Bowman had failed to provide proper care and custody for her children in the past and would be unlikely to be able to provide that proper care and custody within a reasonable amount of time given the children’s ages.
 
 [11]
 
 Having determined that there was clear and convincing evidence of at least one ground to terminate her parental rights,
 
 [12]
 
 we need not address whether the evidence of the other grounds was sufficient.
 

 As for the best interests determination, which Bowman may mean to challenge with her argument that she and her children loved each other, we do not disagree with the family court’s finding that termination was in the children’s best interests. While we have no reason to doubt that the family court accurately
 
 *197
 
 found that Bowman loves her children, there still is a serious dispute on the record concerning whether Bowman had a healthy bond of any sort with her children. Under these circumstances, and in light of the evidence of the serious abuse and neglect in this case, as well as the children’s lingering emotional problems, we cannot say that the family court erred in finding termination in the children’s bests interests.
 
 [13]
 

 El. BOWMAN’S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM
 

 A. STANDARD OF REVIEW
 

 Whether Bowman was denied the effective assistance of counsel presents a question of constitutional law subject to review de novo.
 
 [14]
 

 B. LEGAL STANDARD
 

 As this Court explained in
 
 In re EP:
 

 [15]
 

 The right to counsel guaranteed by the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, § 20, is the right to effective assistance of counsel.
 
 People v Pubrat,
 
 451 Mich 589, 594; 548 NW2d 595 (1996). The juvenile court is required to appoint an attorney for the child in child protective proceedings. MCL 712A.17c(7); MSA 27.3178(598.17c)(7). Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings. Thus, the principles of effective assistance of
 
 *198
 
 counsel developed in the context of criminal law apply by analogy in child protective proceedings.
 
 In re Simon,
 
 171 Mich App 443, 447; 431 NW2d 71 (1988);
 
 In re Trowbridge,
 
 155 Mich App 785, 786; 401 NW2d 65 (1986).
 

 To prevail on this claim of ineffective assistance of counsel, Bowman must show that her trial counsel's performance was deficient, i.e., she must “show that counsel’s performance fell below an objective standard of reasonableness, and that the representation so prejudiced” her that it denied her a fair trial.
 
 [16]
 
 This necessarily entails proving prejudice to Bowman, which means that there is “a reasonable probability that, but for counsel’s unprofessional errors, the result would have been different.”
 
 [17]
 

 C. DIFFERENT RESULT
 

 The way Bowman phrases the question on appeal suggests, at first glance, that she intends to argue that her trial counsel was ineffective for allowing her to enter a no-contest plea rather than requiring the fia to prove the allegations in the petition. However, the substantive argument in her brief suggests that she truly intends to argue that counsel’s performance at the termination hearing was ineffective because he asked few questions, did not object when “necessary,” and gave a very brief closing argument. For the most part, the problem with Bowman’s contention is that she has not identified for us what questions her attorney should have asked that would have elicited testimony that would have, in turn, convinced the family court not to terminate her parental rights. Nor does
 
 *199
 
 she identify when her attorney failed to object to questioning or testimony despite the fact that it was “necessary” to do so. While we have reviewed the record in this case, we cannot discern any obvious errors in Bowman’s attorney’s conduct at the termination hearing. Further, it is not enough for Bowman “simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for [her] claims . . . and then search for authority either to sustain or reject [her] position.”
 
 [18]
 

 As for Bowman’s contention that her trial attorney’s closing argument was brief, we agree. However, we have no basis to conclude that the brevity of the argument, including counsel's failure to comment about particular pieces of evidence, was unnecessarily brief and contributed to the family court’s decision to terminate Bowman’s parental rights. Bowman’s counsel specifically contended that termination was not in the children’s best interests. He argued that the better approach to helping the children, given their bond with their mother, was to continue their foster care placement while Bowman attempted to improve her skills as a parent and to maintain her sobriety and abstinence from drugs. In fact, Bowman’s attorney’s arguments reveal that he made a calculated decision to emphasize the best interests factors rather than evidence of the statutory grounds for termination. Following an unsuccessful strategy does not mean that an attorney was ineffective.
 
 [19]
 
 In this case, the strategy was a good one because it was reasonably calculated to address the low probability that Bow
 
 *200
 
 man would retain her parental rights based solely on a sufficiency of the evidence argument. Further, we see no reasonable probability whatsoever that a more eloquent and lengthy argument would have persuaded the family court to reach a different conclusion in this case because the evidence supporting termination was so strong.
 

 IV. RICHARDSON’S RIGHT TO AN ADJUDICATION
 

 A. STANDARD OF REVIEW
 

 Richardson first contends that the family court erred in terminating his parental rights because it had failed to hold an adjudication. This issue concerning family court procedure under the court rules presents a question of law subject to review de novo.
 
 [20]
 

 B. PROTECTIVE PROCEEDING PROCEDURES
 

 MCR 5.972 entitles a respondent in a child protective proceeding to a trial, known as an adjudication.
 
 [21]
 
 At the adjudication, the petitioner, the fia in this case, must prove one or more of the allegations in the petition that indicate that the children who are the subject of the proceeding come within the family court’s jurisdiction, as defined by MCL 712A.2(b). This proof must meet the preponderance standard and must rely on legally admissible evidence.
 
 [22]
 
 If the family court finds evidence of abuse and neglect proved by a pre
 
 *201
 
 ponderance of the legally admissible evidence presented at the adjudication, it then proceeds to the dispositional phase of the protective proceedings.
 
 [23]
 

 During the dispositional phase, the family court can terminate parental rights immediately under certain circumstances,
 
 [24]
 
 otherwise it conducts periodic review hearings
 
 [25]
 
 and may enter orders that provide services, placement, and parental visitation, as necessary and beneficial for the children.
 
 [26]
 
 In contrast to an adjudication, the hearings conducted during the dis-positional phase do not depend on legally admissible evidence.
 
 [27]
 
 Instead, “ [a]ll relevant and material evidence” is admissible “to the extent of its probative value, even though such evidence may not be admissible at trial.”
 
 [28]
 
 If the petitioner files a supplemental petition seeking to terminate parental rights based on allegations that were proved at the adjudication, it may use “all relevant and material evidence”
 
 [29]
 
 to prove that at least one statutory ground for termination exists.
 
 [30]
 
 However, because the need to prove the family court’s jurisdiction by legally admissible evidence is entrenched in family court procedures, if the petitioner requests termination based on new or changed circumstances, it must retreat to the admissibility standard used in an adjudication.
 
 [31]
 
 This require-
 
 *202
 
 merit exists even though the family court has already concluded that the children came within its jurisdiction.
 
 [32]
 
 Only after the family court determines that it has been presented with legally admissible evidence that demonstrates that a statutory ground for termination is clear and convincing
 
 [33]
 
 can the family court proceed to determine whether termination is in the children’s best interests.
 
 [34]
 

 The court rules permit some variations on what would otherwise be a fairly uncomplicated procedural progression from petition, to adjudication, to disposition, to family reunification or termination if necessary. As this case illustrates, once the family court acquires jurisdiction over the children, MCR 5.973(A)
 
 [35]
 
 authorizes the family court to hold a dispositional hearing “to determine measures to be taken . . .
 
 against any adult . . .
 
 .”
 
 [36]
 
 MCR 5.973(A)(5)(b) then allows the family court “to order compliance with all or part of the case service plan and
 
 may enter such orders as it considers necessary in the interest of the child.”
 

 [37]
 

 Consequently, after the family court found that
 
 the children
 
 involved in this case
 
 *203
 
 came within its jurisdiction on the basis of Bowman’s no-contest plea and supporting testimony at the adjudication, the family court was able to order Richardson to submit to drug testing and to comply with other conditions necessary to ensure that the children would be safe with him even though he was not a respondent in the proceedings. This process eliminated the fia’s obligation to allege and demonstrate by a preponderance of legally admissible evidence that Richardson was abusive or neglectful within the meaning of MCL 712A.2(b) before the family court could enter a dispositional order that would control or affect his conduct. Rather, as we examine in more detail in the next section, this alternative process imposed on the family court an obligation to comply with the procedures for termination in MCR 5.974(E) once the EIA filed the petition seeking termination. Thus, the family court’s failure to hold an adjudication with respect to Richardson did not bar it from proceeding to terminate his parental rights.
 
 [38]
 

 V. RICHARDSON’S RIGHT TO DUE PROCESS
 

 A. STANDARD OF REVIEW
 

 Richardson claims that terminating his parental rights without first holding an adjudication violated his due process right to notice. This is a legal question that this Court reviews de novo.
 
 [39]
 

 
 *204
 
 B. DUE PROCESS
 

 Recently, in
 
 In re AMB,
 

 [40]
 

 this Court briefly examined the concept of procedural due process, which is at issue in this case, in the context of a protective proceeding, explaining:
 

 “The federal and Michigan constitutions guarantee that the state cannot deny people ‘life, liberty, or property without due process of law.’ Due process, which is similarly defined under both constitutions, specifically enforces the rights enumerated in the Bill of Rights, and it also provides for substantive and procedural due process. Procedural due process limits actions by the government and requires it to institute safeguards in proceedings that affect those rights protected by due process, such as life, liberty, or property.”
 

 At issue here is the right to procedural due process. A procedural due process analysis requires a court to consider “(1) whether a liberty or property interest exists which the state has interfered with, and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient.”
 

 There is no question that parents have a due process liberty interest in caring for their children and that child protective proceedings affect that liberty interest.
 
 [41]
 

 Thus, the
 
 AMB
 
 Court concluded, the pertinent question was whether the procedures used were constitutionally adequate.
 
 [42]
 
 As Richardson contends, procedural due process usually requires notice as part of adequate procedures.
 
 [43]
 

 Nevertheless, Richardson does not claim that he was denied notice of the hearing at which the trial
 
 *205
 
 court terminated his parental rights. Rather, the crux of Richardson’s argument is that the family court did not hold an adjudication of his rights at the outset of this protective proceeding and then used hearsay evidence adduced in subsequent dispositional review hearings conducted while he was not a respondent when terminating his parental rights. Thus, from his view, he was denied notice of the allegations against him that were used to terminate his parental rights.
 

 As we have explained, the court rules simply do not place a burden on a petitioner like the fia to file a petition and sustain the burden of proof at an adjudication with respect to every parent of the children involved in a protective proceeding before the family court can act in its dispositional capacity. The family court’s jurisdiction is tied to the children, making it possible, under the proper circumstances, to terminate parental rights even of a parent who, for one reason or another, has not participated in the protective proceeding.
 
 [44]
 

 The termination proceeding in this case exemplifies the problem of holding an adjudication against only one parent and then proceeding to terminate two parents’ parental rights at the same proceeding. This process can be quite confusing. The parent who has been subject to an adjudication, like Bowman, can have her parental rights terminated on the basis of all the relevant and material evidence on the record, including evidence that is not legally admissible.
 
 [45]
 
 In contrast, the petitioner must provide legally admissible evidence in order to terminate the rights of the parent
 
 *206
 
 who was not subject to an adjudication, like Richardson.
 
 [46]
 
 Notably, Richardson does not specifically contest the constitutional validity of MCR 5.974(E) and (F), the two subrules that permit these differing evidentiary standards at the termination hearing.
 

 Clearly, there were numerous instances in which the witnesses at the termination hearing presented hearsay that could not be used to terminate Richardson’s parental rights. Some witnesses, intentionally or inadvertently, were very effective at obscuring the fact that they were actually repeating someone else’s statements,
 
 [47]
 
 instead couching what they heard in terms of their own observation or a simple statement of fact.
 
 [48]
 
 In at least a few instances, by removing the reference to the declarant, the witness testifying at the termination hearing made a statement fit into an exception to the rule against hearsay. The record also reflects that there were a number of times when the family court did not appear to recognize that hearsay was admissible only with respect to the allegations against Bowman. However, much of the hearsay introduced at the termination hearing properly related to Bowman’s circumstances, not Richardson’s. Some of the hearsay created an appropriate evidentiary foundation for the family court to consider in the context of its best interests determination, after finding clear and convincing, legally admissible evidence to
 
 *207
 
 terminate Richardson’s parental rights.
 
 [49]
 
 Additionally, Richardson’s own attorney attempted to use hearsay to his benefit. Thus, the mere existence of hearsay at the termination hearing does not warrant reversal.
 

 Whatever confusion the family court expressed at the termination hearing did not permeate its written findings in which it determined that there was clear and convincing evidence of several statutory grounds for terminating Richardson’s parental rights. Only one was necessary.
 
 [50]
 
 Ignoring the hearsay, the fta did provide clear and convincing, legally admissible evidence that Richardson had failed to provide proper care and custody of his children and would not be able to provide this proper care and custody in a reasonable time, considering the ages of his children.
 
 [51]
 
 For instance, Richardson placed the blame for what happened to the children on Bowman’s shoulders, noting that he was out of town while some of the problems with the children occurred. He never acknowledged that, irrespective of Bowman’s role in causing these problems, he still had an independent duty to ensure that the children were living in a safe home with adequate supervision. There was ample evidence on the record at the termination hearing that the children’s living arrangement with Bowman was not safe and there was no real supervision there. In fact, when home, Richardson contributed to the danger in the home by using it as a place to buy and sell drugs. Though much of this evidence was brought out at the termination hearing through the testimony of Richard
 
 *208
 
 son’s therapist, these statements are excluded from the definition of hearsay because they were an admission and he was a party opponent of the petitioner, which was offering the evidence.
 
 [52]
 
 Furthermore, in the therapist’s opinion, founded on her interaction with Richardson and results from psychological tests he took, Richardson was impulsive, lacked insight, and was immature. The family court observed similar behavior in Richardson simply through their interactions in this proceeding. As the family court found, these factors certainly would affect his ability to provide proper care and custody for the children, who each had special needs, in the future. Though Richardson did testify about the progress he had made in terms of keeping a job and abstaining from drugs, we cannot say that the trial court clearly erred in finding adequate proof of this statutory ground for termination.
 

 More importantly, returning to Richardson’s central contention that it was fundamentally unfair to use evidence concerning him gathered from other hearings when he was not a respondent because he was unaware of these allegations, we cannot agree. Richardson was involved in many of these other hearings. He was represented by court-appointed counsel at these other hearings in which he participated. Richardson addressed the family court during a number of these hearings. Further, the petition seeking to terminate his parental rights included a long list of factual allegations concerning his conduct and why it supported termination; to say that the allegations in this petition were extensive would be an understatement.
 
 *209
 
 The FLA gave him actual, advance notice of the allegations it intended to make concerning him at the termination hearing. Though there was confusion at the hearing regarding how and whether to admit certain hearsay statements, given the dissimilar evidentiary standards applicable to Richardson and Bowman, he was given the notice to which he claims he was entitled. Thus, he has failed to demonstrate that he is entitled to relief on the basis of a due process violation.
 

 VI. RICHARDSON’S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM
 

 Richardson contends that his attorney at the termination hearing, David Woodruff, was ineffective for failing to demand an adjudication. Richardson underscores what he sees as the deficiency of this decision by quoting a portion of the transcript indicating that Woodruff knew that hearsay was not admissible to prove the statutory ground to terminate Richardson’s parental rights. Woodruff was definitely legally correct in that instance in insisting that the petitioner must prove new allegations supporting termination with clear and convincing, legally admissible evidence. However, as we have already explained, though the proceedings would have been much less confusing had the family court conducted an adjudication with respect to Richardson, the court rules did not require an adjudication. An attorney is not obligated to advocate a legally meritless position.
 
 [53]
 
 Thus, Richardson was not denied his right to effective assistance of counsel when Woodruff failed to raise this issue in the family court.
 

 
 *210
 
 The Court affirms the order terminating Bowman’s parental rights in Docket No. 228856. The Court affirms the order terminating Richardson’s parental rights in Docket No. 228975.
 

 [1]
 

 1 Emphasis added.
 

 [2]
 

 2 The prosecutor representing the fia.
 

 [3]
 

 3 Bowman’s attorney.
 

 [4]
 

 4 Richardson’s attorney.
 

 [5]
 

 A teenage, male cousin allegedly sexually abused LB while she was living with a relative.
 

 [6]
 

 In re Trejo
 
 Minors, 462 Mich 341, 366-357; 612 NW2d 407 (2000); MCR 5.974(1).
 

 [7]
 

 MCL 712A.19b(3); see
 
 In re IEM,
 
 233 Mich App 438, 450-451; 592 NW2d 751 (1999).
 

 [8]
 

 Trejo, supra
 
 at 354; MCL 712A.19b(5).
 

 [9]
 

 See MCL 712A.19b(3)(c)(i), (c)(ii), and (g).
 

 [10]
 

 See MCL 712A.19b(3)(b)(i).
 

 [11]
 

 MCL 712A.19b(3)(g).
 

 [12]
 

 See
 
 IEM, supra
 
 at 450-451.
 

 [13]
 

 MCL 712A19b(5).
 

 [14]
 

 See
 
 People v Toma,
 
 462 Mich 281, 310; 613 NW2d 694 (2000).
 

 [15]
 

 In re EP,
 
 234 Mich App 582, 597-598; 595 NW2d 167 (1999), overruled on other grounds by
 
 Trejo, supra.
 

 [16]
 

 People v Pickens,
 
 446 Mich 298, 338; 521 NW2d 797 (1994).
 

 [17]
 

 People v Johnson,
 
 451 Mich 115, 124; 545 NW2d 637 (1996).
 

 [18]
 

 Mitcham v Detroit,
 
 355 Mich 182, 203; 94 NW2d 388 (1959).
 

 [19]
 

 People v Bart (On Remand),
 
 220 Mich App 1, 15, n 4; 558 NW2d 449 (1996).
 

 [20]
 

 See
 
 Grzesick v Cepela,
 
 237 Mich App 554, 559; 603 NW2d 809 (1999).
 

 [21]
 

 In re Hatcher,
 
 443 Mich 426, 435; 505 NW2d 834 (1993);
 
 In re Brock,
 
 442 Mich 101, 108-109; 499 NW2d 752 (1993).
 

 [22]
 

 See MCR 5.972(C)(1);
 
 In re Snyder,
 
 223 Mich App 85, 89-90; 566 NW2d 18 (1997).
 

 [23]
 

 Hatcher, supra
 
 at 435-436.
 

 [24]
 

 MCR 5.974(D).
 

 [25]
 

 MCR 5.973(B)-(E).
 

 [26]
 

 MCR 5.973; see, generally,
 
 Brock, supra
 
 at 108.
 

 [27]
 

 MCR 5.973(A)(4).
 

 [28]
 

 MCR 5.973(A)(4)(a).
 

 [29]
 

 MCR 5.974(F)(2).
 

 [30]
 

 See MCL 712A19b(3);
 
 IEM, supra
 
 at 450451.
 

 [31]
 

 See, generally,
 
 In re Gilliam,
 
 241 Mich App 133, 137-138; 613 NW2d 748 (2000).
 

 [32]
 

 MCR 5.974(E)(1).
 

 [33]
 

 MCR 5.974(E)(1), (F)(3).
 

 [34]
 

 MCR 5.974(E)(2), (F)(3); MCL 712A.19b(5).
 

 [35]
 

 MCR 5.973(A) finds its statutory corollary in MCL 712A.6, which provides:
 

 The [family] court has jurisdiction over adults as provided in this chapter and may make orders affecting adults as in the opinion of the court are necessary for the physical, mental, or moral well-being of a particular juvenile or juveniles under its jurisdiction. However, those orders shall be incidental to the jurisdiction of the court over the juvenile or juveniles.
 

 [36]
 

 MCR 5.973(A) (emphasis added).
 

 [37]
 

 Emphasis added.
 

 [38]
 

 Interestingly, in its written findings the family court concluded that there was clear and convincing evidence that Richardson’s conduct fit within MCL 712A.2(b)(2), one of the statutory grounds for jurisdiction that would have been tested at an adjudication.
 

 [39]
 

 See
 
 EP, supra
 
 at 598-599.
 

 [40]
 

 In re AMB,
 
 248 Mich App 144, 209; 640 NW2d 262 (2001).
 

 [41]
 

 41 Citations omitted.
 

 [42]
 

 Id.
 

 [43]
 

 See
 
 Bundo v Walled Lake,
 
 395 Mich 679, 696; 238 NW2d 154 (1976).
 

 [44]
 

 See, e.g., MCL 712A.19b(3)(a) (permitting termination when the parent is unidentifiable, has deserted the child, or has surrendered the child).
 

 [45]
 

 See MCR 5.974(F)(2).
 

 [46]
 

 See MCR 5.974(E)(1).
 

 [47]
 

 See MRE 801(c) (“ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.”).
 

 [48]
 

 That these are hearsay statements is apparent from the transcripts of the other hearings in this case as well as testimony by other witnesses at the termination hearing.
 

 [49]
 

 See MCR 5.974(E)(2), referring to the lower evidentiary standard in MCR 5.974(F)(2).
 

 [50]
 

 See
 
 IEM, supra
 
 at 450-451.
 

 [51]
 

 MCL 712A.19b(3)(g).
 

 [52]
 

 See MRE 801(d)(2).
 

 [53]
 

 See
 
 People v Snider,
 
 239 Mich App 393, 425; 608 NW2d 502 (2000).