*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* O. MCFARLAND, Minor.

UNPUBLISHED
January 15, 2025
11:56 AM

No. 371389
Kalamazoo Circuit Court
Family Division
LC No. 2020-000348-NA

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating his parental rights to his minor child under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (c)(*ii*) (other conditions that could have caused the child to come within the trial court's jurisdiction continue to exist), and (j) (reasonable likelihood of harm if the child is returned to parent). We affirm.

## I. BACKGROUND

This matter began with a December 2020 petition filed by the Department of Health and Human Services (DHHS). In relevant part, the petition alleged the minor child tested positive for substances at birth. The minor child was placed in the neonatal intensive care unit because he displayed symptoms of withdrawal and required treatment for an infection. It was also alleged respondent and the minor child's mother did not have "stable housing" and lived in a hotel. It was requested the trial court authorize the petition, place the minor child in the care of DHHS, and exercise jurisdiction. After a preliminary hearing, the trial court authorized the petition, and the minor child was placed in care. Respondent was granted supervised parenting time.

In February 2021, respondent admitted he lacked stable housing. The trial court exercised jurisdiction and ordered reasonable efforts toward reunification be made. After the initial dispositional hearing, respondent was ordered to comply with the case-service plan, which offered respondent the following services: (1) parenting time; (2) substance screenings; (3) the "Supportive Visitation and Family Reunification program"; and (4) housing resources. Early in the proceedings, concerns were raised about ongoing domestic violence between respondent and the minor child's mother. Nonetheless, respondent and the minor child's mother planned together.

-1-

Respondent was referred for a psychological evaluation, which recommended respondent participate in individual therapy.

Sometime between June 22, 2021, and September 20, 2021, respondent, who had never had a driver's license, moved to Benton Harbor. Respondent did so against the advice of caseworkers, who warned him the move could impact his ability to participate in services and parenting time. Ultimately, respondent's parenting coach transported the minor child to Benton Harbor for parenting times, where the parenting coach provided one-on-one services to respondent. Initially, respondent lived with his mother and brother, while he sought independent housing in Benton Harbor. Respondent also ended his relationship with the minor child's mother, whose parental rights were later terminated.

Respondent, who began to submit to substance screenings and individual therapy, started to make progress. Sometime between late 2022, and early 2023, respondent moved into a room at the Travel Lodge Motel in Benton Harbor. Respondent continued to live there despite concerns it was not suitable for the minor child, but it was determined respondent no longer needed to submit to substance screenings. In March 2023, a child protective services (CPS) investigation was opened in Berrien County in relation to claims respondent physically abused his teenaged daughter by striking her with a belt, or electrical cord, in February 2022. The allegations were substantiated. Although there was hope respondent's parenting time would be expanded to unsupervised, this progress came to a halt. In June 2023, the permanency planning goal was changed to adoption. However, DHHS continued to provide respondent with services and to facilitate supervised parenting times.

On November 15, 2023, respondent was arrested and criminally charged after he struck a man with a golf club. Respondent remained in jail for the remainder of the proceedings. He could no longer attend parenting times. Two days later, DHHS filed a supplemental petition for termination, seeking termination under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). The supplemental petition alleged new conditions existed, including (1) domestic violence; (2) criminality; and (3) improper parenting techniques, i.e., discipline.

On March 28, 2024, the termination hearing was held. At the beginning of the hearing, the trial court stated: "We have proposed Exhibits 95 and 96. Any objection to those being admitted and considered?" Counsel for DHHS, counsel for respondent, and the lawyer-guardian ad litem (L-GAL) each indicated they had no objection. The trial court stated: "Then 95 and 96 are . . . admitted, so the court can consider 1 through 96 in the exhibits." Exhibits 91 through 94 were previously admitted into evidence at various hearings throughout the proceedings. Exhibit 92 contained three police reports.

The caseworker testified about respondent's lack of sufficient progress during the three-year proceedings. During the caseworker's testimony, two of the police reports in Exhibit 92 were discussed, and they concerned the February 2022 abuse of respondent's daughter and the November 2023 assault. After testifying about respondent's criminality and domestic violence during the proceedings, the caseworker testified that respondent was still in jail and did not have proper housing. The caseworker also made observations about respondent's mental health, which included summarizing the observations of respondent's therapist and the parenting coach. The caseworker was concerned respondent would be unable to safely parent the minor child and

recommended termination of his parental rights. Respondent testified and admitted he struck his daughter with a belt and hit the assault victim with a golf club. Respondent, who reported he would be released from jail on April 11, 2024, requested additional time to make progress.

The trial court found statutory grounds for termination were established under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). During its ruling from the bench, the trial court stated it considered the exhibits, and it referenced police reports during its rulings related to MCL 712A.19b(3)(c)(*ii*) and (j). The trial court also found termination of respondent's parental rights was in the minor child's best interests and reasonable efforts toward reunification were made. This appeal followed.

## II. REASONABLE EFFORTS

Respondent argues DHHS failed to offer him services to help him overcome his issues with anger management and domestic violence.

### A. PRESERVATION AND STANDARD OF REVIEW

"In order to preserve an argument that [DHHS] failed to provide adequate services, the respondent must object or indicate that the services provided to them were somehow inadequate . . . ." *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022) (quotation marks and citation omitted; second alteration in original). Respondent did not argue the initial case-service plan was inadequate. In fact, counsel for respondent stated the proposed services outlined in the case-service plan were "appropriate." Additionally, at later hearings, respondent did not challenge the adequacy of the services. Aside from requesting transportation assistance, or that services be offered in Benton Harbor, respondent did not challenge the assistance DHHS was providing to him. At no point did respondent argue he should be provided with additional or different assistance related to mental health or anger management services. Indeed, at a December 9, 2022 review hearing, respondent's counsel questioned why anger management services were required. Because respondent did not challenge "the adequacy of the services being provided," the reasonable efforts argument is unpreserved. See *id*. at 336-338.

Unpreserved arguments are reviewed for plain error affecting substantial rights. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). "To avoid forfeiture under the plainerror rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citations omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Reversal is only warranted when the plain error "seriously affect[ed] the integrity, fairness, or public reputation of judicial proceedings." *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020); *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 291; ___ NW3d ___ (2023).

### B. ANALYSIS

Except under aggravating circumstances not present in this case, DHHS "has a statutory duty to make reasonable efforts to reunify the child and the family . . . ." *In re Atchley*, 341 Mich App at 338 (quotation marks and citation omitted), citing MCL 712A.19a(2).

This means [DHHS] "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). "While [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." [*In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).] This means a respondent-parent must both participate in services and "demonstrate that they sufficiently benefited from the services provided." *Id.* [*In re Atchley*, 341 Mich App at 338-339.]

While respondent was not specifically provided with domestic violence counseling or classes during the proceedings, review of the case-service notes, which were admitted into evidence, support that respondent initially refused domestic violence services because he had completed them in the past. Later, when respondent was agreeable to receiving domestic violence services, there were issues with locating the appropriate service provider because respondent lived in Benton Harbor and had transportation issues. Some service providers did not accept respondent's insurance and at least one did not treat "perpetrators." It is notable DHHS is required to make *reasonable* efforts—not limitless or excessive efforts. See *In re Atchley*, 341 Mich App at 338. DHHS made reasonable efforts by repeatedly attempting to enroll respondent in domestic violence services.

Additionally, respondent was provided with services to address his issues with anger management and domestic violence. Indeed, respondent was provided with individual counseling, which addressed (1) domestic violence; (2) emotional stability; (3) problem solving; and (4) providing a stable environment for the minor child. Respondent was also provided with one-on-one parent skills training with a parenting coach, which were geared toward appropriate discipline of children and regulating emotions. Respondent failed to benefit despite the parenting coach's service being "above and beyond" what was usually provided. Importantly, in 2020, respondent completed a domestic violence treatment program in relation to a domestic violence conviction. He clearly did not benefit, and there is no indication respondent would have fared better if DHHS had offered other services or additional services. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005) ("The fact that [the] respondent sought treatment independently in no way compels the conclusion that [DHHS's] efforts toward reunification were not reasonable, and, more to the point, does not suggest that [the] respondent would have fared better if the worker had offered those additional services to him."). The trial court did not commit plain error affecting respondent's substantial rights when it determined DHHS made reasonable efforts to facilitate reunification.

## III. ADMISSION OF EVIDENCE

Respondent argues the trial court relied on inadmissible hearsay when determining "new factual allegations" of criminality, domestic violence, and mental health issues existed. According to respondent, because he was adjudicated based on his lack of stable housing, the trial court had to consider legally admissible evidence when relying on new allegations to support termination of his parental rights. We conclude respondent is not entitled to relief.

## A. PRESERVATION AND STANDARD OF REVIEW

To properly preserve an issue for appellate review, a respondent should object in the trial court. *In re VanDalen*, 293 Mich App at 135. "To preserve an evidentiary error for appeal, a party must object at trial on the same ground that it presents on appeal. Counsel must state the specific ground of objection, if the specific ground was not apparent from the context." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 709-710; 922 NW2d 662 (2018) (quotation marks and citations omitted). There is no indication respondent objected to the challenged portions of the caseworker's testimony, or the admission of the police reports into evidence. The issue is unpreserved, and we review for plain error affecting substantial rights. See *In re Pederson*, 331 Mich App at 463.

## B. ANALYSIS

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Pederson*, 331 Mich App at 463-464 (quotation marks and citation omitted).

> During the adjudicative phase, the court considers the propriety of taking jurisdiction over the subject child. This can be done in two ways. First, a parent may plead to the allegations in a jurisdictional petition, thereby bringing the child under the court's protection. Second, the parent may demand a trial (bench or jury) to contest the allegations. [*In re Thompson*, 318 Mich App 375, 378; 897 NW2d 758 (2016) (citations omitted).]

The rules of evidence apply at adjudication trials. *In re Collier*, 314 Mich App 558, 568, 573; 887 NW2d 431 (2016). Generally, at a termination hearing, "all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value." MCR 3.977(H)(2); see also *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019) (when the trial court holds a termination hearing, the rules of evidence are generally inapplicable). However, "[i]f . . . termination is sought on the basis of grounds new or different from those that led the court to assert jurisdiction over the children, the grounds for termination must be established by legally admissible evidence." *In re Jenks*, 281 Mich App 514, 516; 760 NW2d 297 (2008), citing MCR 3.977(F)(1)(b). This requirement exists "because the need to prove the family court's jurisdiction by legally admissible evidence is entrenched in family court procedures . . . ." *In re CR*, 250 Mich App 185, 201-202; 646 NW2d 506 (2002), overruled on other grounds *In re Sanders*, 495 Mich 394 (2014). Therefore, if DHHS "requests termination based on new or changed circumstances, [the trial court] must retreat to the admissibility standard used in an adjudication." *In re CR*, 250 Mich App at 201.

The trial court exercised jurisdiction because respondent admitted he lacked stable housing. "[A]ll relevant and material evidence, including oral and written reports," on the issue of housing could be received by the court at the termination hearing and "relied upon to the extent of its probative value." See MCR 3.977(H)(2). During the proceedings, however, new allegations emerged that respondent had issues with: (1) domestic violence; (2) criminality; and (3) improper parenting techniques, i.e., discipline. Because these allegations were not the basis for the trial court's original assumption of jurisdiction, legally admissible evidence was required to prove them. See MCR 3.977(F)(1)(b); *In re Jenks*, 281 Mich App at 516.

First, respondent argues the caseworker was not permitted to testify about information she read in a February 2023 police report, which was admitted into evidence as part of Exhibit 92[1] and allegedly contained inadmissible hearsay within hearsay.[2] The February 2023 police report reflected allegations respondent had physically abused his daughter in 2022 by (1) hitting her with a belt or extension cord; and (2) slapping her in the face with such force it caused a blood vessel to rupture. Assuming without deciding plain error occurred, we conclude the error did not affect respondent's substantial rights. Indeed, the evidence was cumulative because respondent admitted at the termination hearing he hit his daughter with a belt in February 2022. See, e.g., *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor, & Merrill, Inc*, 267 Mich App 625, 652; 705 NW2d 549 (2005) (holding "[i]mproper admission of evidence is harmless if it is merely cumulative to other properly admitted evidence"). While respondent denied he slapped his daughter in the face, which is what was alleged in the February 2023 police report, the fact of the matter remains respondent admitted he physically abused his daughter more than one year after the minor child entered care and while he was participating in services. The amount of times respondent admitted to physically abusing his daughter, in 2022, is immaterial. In sum, legally admissible evidence—i.e., respondent's own testimony—supports the abuse occurred. Because "the mere existence of hearsay at the termination hearing does not warrant reversal," *In re CR*, 250 Mich App at 207, respondent is not entitled to relief.

Respondent also challenges admission of a March 2023 police report, which was part of Exhibit 92, and which indicated that respondent absconded from bond and failed to appear at a March 1, 2023 hearing in relation to a criminal charge. Even assuming the March 2023 report was improperly admitted, we fail to see how respondent's substantial rights were affected by the admission of the report. The caseworker did not testify about the March 2023 police report, and it merely supports respondent absconded from bond and did not attend a court hearing. The prejudicial effect of this evidence is minimal, especially when considering the February 2022 abuse of respondent's daughter and respondent hitting the assault victim with a golf club. Respondent does not discuss the content of the March 2023 police report on appeal, and he does not challenge its truth. Because respondent has failed to establish the plain error affected his substantial rights, he is not entitled to relief. See *In re VanDalen*, 293 Mich App at 135.

Next, respondent argues the caseworker was permitted to testify about information she read in a November 2023 police report, which was admitted into evidence as part of Exhibit 92 and

---

[1] Although the trial court never stated under which rule of evidence the police reports in Exhibit 92 were admitted, the police reports were effectively admitted into evidence at the termination hearing.

[2] Hearsay is a "statement," other than one made by the declarant while testifying "at the current trial or hearing," offered "to prove the truth of the matter asserted in the statement." MRE 801(c). " 'Statement' means a person's oral assertion, written assertion, or nonverbal conduct if the person intended it as an assertion." MRE 801(a). " 'Declarant' means the person who made the statement." MRE 801(b). Hearsay is inadmissible except as provided by the rules of evidence. MRE 802. "Under MRE 805, hearsay within hearsay is excluded where no foundation has been established to bring each independent hearsay statement within a hearsay exception." *Solomon v Shuell*, 435 Mich 104, 129; 457 NW2d 669 (1990) (footnote omitted).

allegedly contained inadmissible hearsay within hearsay. The November 2023 police report concerned allegations that respondent struck the assault victim with a golf club multiple times. However, any plain error relating to the November 2023 police report did not affect respondent's substantial rights. Indeed, the evidence was cumulative because respondent admitted at the termination hearing that he hit the assault victim with a golf club. See, e.g., *Detroit/Wayne Co Stadium Auth*, 267 Mich App at 652. While respondent did not admit he struck the assault victim multiple times with a golf club, as reflected in the November 2023 police report, respondent admitted to hitting someone with a golf club. This occurred while the minor child was in care, and respondent was receiving services to address his emotional regulation.

Respondent does not purport to explain how, or why, the error prejudiced him. Respondent does not argue it is untrue that he hit someone with a golf club. Nor can he, as he pleaded to assault with a dangerous weapon, MCL 750.82, in relation to the crime and was serving a jail sentence for that conviction at the time of termination. While respondent argues the truth of that assertion was supported only by hearsay statements, as already stated, legally admissible evidence—i.e., respondent's own testimony—supported that respondent hit the assault victim with a golf club. Because "the mere existence of hearsay at the termination hearing does not warrant reversal," *In re CR*, 250 Mich App at 207, respondent is not entitled to relief.

Finally, respondent argues the caseworker was improperly permitted to testify about his therapist's and the parenting coach's observations about respondent's mental health. Even assuming the evidence was inadmissible hearsay and improperly admitted, the evidence was cumulative. See, e.g., *Detroit/Wayne Co Stadium Auth*, 267 Mich App at 652. Respondent's psychological evaluation was admitted into evidence as Exhibit 38 at the December 16, 2021 hearing, and was considered by the trial court when deciding whether to terminate respondent's parental rights. Respondent does not challenge the admission of the evaluation into evidence. During the evaluation, respondent reported a history of depression and being prescribed psychotropic medication, but not taking it. Clinical testing revealed "clinical levels of depression and probable trauma symptoms," and it was recommended respondent participate in counseling for mental health issues. Additionally, several court reports and notes from the parenting coach were admitted into evidence at previous hearings as Exhibits 51, 78, and 79. They support that respondent had issues with depression and anxiety and required additional counseling. Respondent does not argue the reports were improperly admitted into evidence, or the trial court should not have considered them at the termination hearing.

Additionally, it was undisputed throughout the proceedings that respondent had a history of anxiety and depression. Indeed, at the February 4, 2021 plea hearing, respondent was asked if he had "physical, mental or emotional problems," and he testified that he had been diagnosed with depression and no longer took psychotropic medication because of the negative side effects. Indeed, the germane issue was not whether respondent had anxiety or depression, but whether respondent benefited from services to address his anger management. This was a concern because of his history with domestic violence and criminality. Admissible evidence was presented to support that respondent wanted to continue counseling to address his issues, and respondent clearly had not benefited from the services. Respondent, who was in jail for his assault conviction, did not show remorse at the time of termination. Because "the mere existence of hearsay at the termination hearing does not warrant reversal," *In re CR*, 250 Mich App at 207, respondent is not entitled to relief.

## IV. ASSISTANCE OF COUNSEL

Respondent argues his counsel was ineffective for failing to object to the admission of hearsay evidence at the termination hearing.

### A. PRESERVATION AND STANDARD OF REVIEW

"In the context of child protective proceedings . . ., this Court has determined that constitutional due process indirectly guarantees a right to the effective assistance of counsel." *In re Londowski*, 340 Mich App 495, 506; 986 NW2d 659 (2022). "The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings[.]" *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). Generally, a party claiming ineffective assistance of counsel "must move in the trial court for a new trial or an evidentiary hearing to preserve the [party's] claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). A party can also preserve a claim of ineffective assistance of counsel by filing a motion in this Court for a remand to the trial court for a *Ginther*[3] hearing. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Respondent did not take steps to preserve his ineffective assistance of counsel claim, and instead raises the issue for the first time on appeal. The ineffective assistance of counsel argument is unpreserved.

"Claims of ineffective assistance of counsel are mixed questions of fact and law." *In re Lovitt (Amended Opinion)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367124); slip op at 2. This Court reviews

> for clear error a trial court's factual findings, and questions of constitutional law are reviewed de novo. Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake. Where a party fails to preserve a claim of ineffective assistance of counsel, this Court's review is limited to mistakes apparent on the record. [*Id.* at ___; slip op at 2 (quotation marks and citations omitted).]

### B. ANALYSIS

"Both the Michigan and federal Constitutions guarantee the right to the assistance of counsel in criminal cases. Given the nature of accusations and consequences in child-protective proceedings, this right has been extended to these civil proceedings." *In re Casto*, 344 Mich App 590, 611; 2 NW3d 102 (2022) (citations omitted). Therefore, "[a] parent has a right to a lawyer in child protective proceedings, including the right to appointed counsel." *In re Lovitt (Amended Opinion)*, ___ Mich App at ___; slip op at 4-5. The right to counsel guarantees effective assistance of counsel. See *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009).

> To establish ineffective assistance of counsel, it must be shown that (1) counsel's performance was deficient, falling below an objective standard of

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

reasonableness, and that (2) the deficient performance prejudiced the respondent. The effective assistance of counsel is presumed, and a party claiming ineffective assistance bears a heavy burden of proving otherwise. The Court cannot substitute its judgment for that of counsel's on matters of litigation strategy, and counsel's performance must be judged based on the knowledge, expertise, and information reasonably available when counsel formulated and implemented the litigation strategy. To establish prejudice, a party claiming ineffective assistance must show that but for counsel's deficient performance, a different result would have been reasonably probable. [*In re Lovitt*, ___ Mich App at ___; slip op at 6 (quotation marks and citations omitted).]

In this case, respondent argues his counsel was ineffective for failing to object to the admission of Exhibit 92, which contained the three police reports discussed above, and the caseworker's testimony relating to the police reports. Respondent also argues his counsel was ineffective for failing to object to the caseworker's testimony concerning his mental health, which included the observations of his therapist and parenting coach.

Assuming without deciding counsel's performance fell below an objective standard of reasonableness, respondent is only entitled to relief if he can establish counsel's deficient performance prejudiced him. See *id*. at ___; slip op at 6. "[T]he test for prejudice is an objective test . . . ." *In re Casto*, 344 Mich App at 611 (quotation marks and citation omitted; alteration in original). "To establish prejudice, a party claiming ineffective assistance must show that but for counsel's deficient performance, a different result would have been reasonably probable." *In re Lovitt*, ___ Mich App at ___; slip op at 6 (quotation marks and citation omitted).

Aside from arguing hearsay was admitted into evidence to support termination of his parental rights, respondent does not purport to explain how, or why, the errors prejudiced him. As already discussed at length, legally admissible evidence supported respondent's abusive and criminal conduct continued during the proceedings. It also supported respondent suffered from anxiety and depression and individual therapy was recommended. While respondent appears to assert the evidence would have been less damaging if he had been given the opportunity to cross-examine certain witnesses, we disagree given the facts of this case. Respondent is not entitled to relief.

## V. STATUTORY GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

Respondent argues the trial court clearly erred by finding termination of his parental rights was proper under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j).

## A. STANDARD OF REVIEW

We review "for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App at 343. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; ___ NW3d ___ (2023).

## B. ANALYSIS

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App at 472 (quotation marks and citation omitted). The trial court did not clearly err by concluding termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*), which authorizes termination when:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

More than 182 days passed between the entry of the February 26, 2021 initial dispositional order and when the trial court entered the order terminating respondent's parental rights on March 28, 2024. See MCL 712A.19b(3)(c)(*i*). The condition that led to adjudication was respondent's lack of stable housing. During the proceedings, respondent was provided with housing resources, which help individuals find housing and sometimes assist with paying security deposits and rent. Respondent was provided with housing applications, was encouraged to apply "anywhere," and was told to follow up with the apartment complexes where he applied for housing. Despite the proceedings taking place in Kalamazoo County, and respondent being warned moving could negatively affect his progress, respondent moved to Benton Harbor sometime between June 22, 2021, and September 20, 2021. During the lengthy proceedings, respondent only applied for two apartments in Benton Harbor despite being informed by caseworkers and service providers he needed to acquire stable housing. Respondent did not apply for housing in Kalamazoo, and he did not follow up on his housing applications in Benton Harbor.

Although respondent implies on appeal he was not provided with assistance with completing housing applications, respondent did not testify about this at the termination hearing. Instead, respondent complained rental applications cost $25 each. Respondent acknowledged he could have received more assistance with the application fees if he applied for housing in Kalamazoo. Aside from claiming he had family support in Benton Harbor and did not want to see certain people in Kalamazoo, respondent could not explain why he did not return to Kalamazoo earlier in the proceedings.

For most of the proceedings, respondent lived in hotels, including the Travel Lodge. There were concerns the Travel Lodge was not suitable for the minor child. Nonetheless, respondent continued to reside there until he was arrested and lodged in jail on November 15, 2023. Respondent was arrested in relation to an assaultive crime he committed at the Travel Lodge. Although respondent argues on appeal the Travel Lodge could be considered a stable housing arrangement, respondent had abandoned that plan at the time of termination. Respondent testified he wanted to return to Kalamazoo and live in a halfway house called Kalamazoo Probation

-10-

Enhancement Program (K-PEP) after he was released from jail in April 2024.[4] Respondent also wanted to apply for housing in Kalamazoo. The caseworker mailed respondent housing applications so he could complete them in jail, but respondent acknowledged the waiting lists were often lengthy. The caseworker did not know how respondent, who was convicted of a crime in Berrien County, would be accepted into K-PEP, and respondent acknowledged at the termination hearing it would not be a fruitful plan. Respondent also acknowledged at the termination hearing he was not prepared to take custody of the minor child, and he had not submitted sufficient information for a relative to be considered for placement. In sum, "the totality of the evidence amply" supports respondent "had not accomplished any meaningful change" in the condition that led to adjudication. See *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

The record also does not support that respondent would be able to rectify his issue with housing within a reasonable time considering the minor child's age. See MCL 712A.19b(3)(c)(*i*). At the time the trial court found statutory grounds for termination, the minor child was three years old and had been out of respondent's care for his entire life. Nothing in the record shows that respondent would rectify his issues within a reasonable time, and respondent admitted he needed additional time. Indeed, respondent lacked commitment during the proceedings and would not be released from jail until April 11, 2024. At that point, respondent would have to begin looking for housing, which would have to be approved by DHHS. Respondent did not know if he would be rehired by his former employer, or if he would have to seek different employment. The minor child needed permanency, and could not wait an indefinite amount of time for respondent to improve. See, e.g., *In re Dahms*, 187 Mich App 644, 647-648; 468 NW2d 315 (1991). The record supports that the condition that led to adjudication continued to exist and there was no reasonable likelihood respondent would rectify it within a reasonable time. See MCL 712A.19b(3)(c)(*i*).

Because termination was proper under (c)(*i*), we need not specifically consider the additional grounds upon which the trial court based its decision. See *In re HRC*, 286 Mich App at 461. Nonetheless, we analyzed the other statutory grounds and concluded the trial court did not clearly err by finding termination was proper under MCL 712A.19b(3)(c)(*ii*) and (j). In so concluding, we did not consider evidence respondent challenges on appeal.[5]

## VI. BEST INTERESTS

Respondent argues the trial court clearly erred when it found termination of his parental rights was in the minor child's best interests.

---

[4] We acknowledge "[i]ncarceration alone is not a sufficient reason for termination of parental rights." *In re Mason*, 486 Mich 142, 146; 782 NW2d 747 (2010).

[5] Respondent argues in a cursory manner that he was not permitted to advance during the proceedings because the trial court failed to hold timely hearings. However, respondent does not cite relevant authority to support his arguments. Nor does respondent explain or rationalize his arguments in a meaningful manner. The arguments are therefore abandoned and need not be considered. See *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016).

## A. STANDARD OF REVIEW

We review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2004). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App at 425 (quotation marks and citation omitted).

## B. ANALYSIS

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. This Court focuses on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App at 346.

When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Evidence supports that respondent and the minor child were bonded to some extent. However, evidence also showed that the bond was not healthy for the minor child. The minor child entered care soon after he was born because he tested positive for illegal substances. Despite being offered services for three years, respondent failed to make sufficient progress. Respondent's issues with criminality and domestic violence persisted, as did his issues with housing, despite respondent being provided services. Respondent never had unsupervised parenting time with the minor child. While respondent attended parenting times, the minor child was transported to Benton Harbor by the parenting coach or another service provider for a majority of the proceedings. The caseworker estimated respondent missed 5 to 10 parenting times between August 2023, until he went to jail on November 15, 2023. Respondent was still in jail at the time of termination.

The minor child, who had never been in respondent's exclusive care, displayed signs of stress and self-harm in the times surrounding parenting times. The minor child's behaviors stopped after November 15, 2023, when respondent's parenting time could not be held because respondent was in jail. At the time of termination, respondent had not seen the minor child in more than four months. The minor child described respondent as "broken" and a "monster." In sum, the minor child's bond with respondent was not healthy for him. See *In re CR*, 250 Mich App at 196-197, and *In re Pederson*, 331 Mich App at 477.

The parent-child bond is only one factor for the trial court to consider. *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). Respondent failed to address his issues with housing, domestic violence, and criminality during the proceedings despite being provided with services. Meanwhile, the minor child was doing well in his placement. The minor child was bonded to the foster parents, with whom he had been placed for a majority of his life. The foster parents were devoted to the minor child's well-being, and were willing to adopt him. The foster parents had already adopted the minor child's half-brother, whom the minor child was bonded with. A preponderance of the evidence establishes termination of respondent's parental rights was in the minor child's best interests.

Affirmed.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates